## THE W. D. HADEN COMPANY V. HOWARD D. DODGEN ET AL.

No. A-6448. Decided January 15, 1958.
(308 S.W. 2d Series 838)

*Dibrell, Dibrell & Greer* and *Louis J. Dibrell,* all of Galveston, for petitioner.

The Court of Civil Appeals erred in holding that plaintiff's suit was a suit against the State, and that the trial court erred in failing to abate the same on motion. Cobb v. Harrington, 144 Texas 360, 190 S.W. 2d 709; Harris County Tax Assessor-Collector v. Reed, 225 S.W. 2d 586.

*Will Wilson,* Attorney General, *C. K. Richards, Cecil C. Rotsch* and *John R. Lennan,* Assistants Atty. Gen. for respondents.

Cited, Herring v. Houston Natl. Exch. Bank, 113 Texas 264, 253 S.W. 813.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This action was instituted against the members and the Executive Secretary of the Game and Fish Commission of Texas by W. D. Haden Company, petitioner here, for a declaratory judgment to establish certain rights under a permit to take mudshell from Galveston Bay. The respondent-defendants filed a plea in abatement asserting that the suit was in reality a suit against the State of Texas, filed without legislative permission. The plea in abatement was overruled and a judgment was entered granting the relief sought. The Court of Civil Appeals held that the plea in abatement should have been sustained, and reversed the trial court's judgment and remanded the cause with directions that the suit be dismissed. 303 S.W. 2d 443. The single point of error before us challenges the holding that the suit is

one against the State which requires legislative permission for its filing and maintenance.

For a number of years W. D. Haden Company has been in the business of producing and selling mudshell from the public waters of the State of Texas. Like others in the business, it has operated under annual permits issued by the Game and Fish Commission of Texas pursuant to authority conferred on the Commission by Articles 4051-4053d, Vernon's Annotated Texas Statutes.

On April 15, 1954 Permit No. 243-A-6, with an expiration date of April 25, 1955, was issued to Haden Company for the taking of mudshell from Galveston Bay. The permit provided that the permittee should pay to the Game and Fish Commission, monthly, the sum of seven cents per cubic yard for mudshell removed. On October 1, 1954 the Game and Fish Commission adopted a resolution increasing the price to be paid by all operators taking mudshell from coastal waters, effective January 1, 1955, from seven cents to ten cents per cubic yard. The resolution was approved by the Governor of Texas as required by Article 4053d on November 4, 1954. On December 6th the Executive Secretary of the Game and Fish Commission notified all permittees, including Haden Company, that their permits were amended to conform to the Commission's action. On February 16, 1955 Haden Company acknowledged receipt of the December 6th communication but, contending that it had a contract right to take mudshell at a price of seven cents until expiration of its current permit on April 25th, paid for that taken during the month of January on the basis of seven cents rather than ten cents per cubic yard. When the Game and Fish Commission refused to recognize the right of the company to continue the taking of mudshell at a price of seven cents and demanded an additional payment of three cents per cubic yard, this suit was filed.

In its petition filed in the trial court petitioner set out the facts substantially as here recited, requested a temporary injunction to prevent a threatened cancellation of its permit while the case was pending and sought a declaratory judgment. The allegations in the petition with respect to the nature of the relief sought by declaration of the court and the prayer on that phase of the case are deemed important and are quoted in full as follows:

"Plaintiff alleges that such permit has the force and effect of

a valid binding contract between it and defendants acting for and in behalf of the State of Texas by virtue of which plaintiff has and should in equity continue to have the right to produce and take shell as provided therein for the price stated therein throughout the remainder of the term thereof by reason of which fact plaintiff is entitled to have this Court enter its judgment declaring that plaintiff does have such right depending, of course, upon plaintiff's continuing to comply with all other terms and conditions of such permit.

\*   \*   \*   \*

"Plaintiff further prays that defendants and each of them be duly cited to appear and answer this its petition for declaratory judgment and that upon final trial hereof, this Honorable Court declare and enter its judgment holding that plaintiff is lawfully entitled under and by virtue of the terms of its said permit and as long as it shall remain in no violation thereof, to continue to produce and take shell thereunder, remitting to defendants the sum of $.07 per yard for all such shell produced and taken until April 25, 1955."

By agreement of the parties the trial court granted a temporary injunction on March 22, 1955 to prevent cancellation of the permit upon the condition, among others, that Haden Company would then pay into the registry of the court a sum computed at three cents per yard on all shell taken since January 1st and would continue to make similar payments into the registry of the court on all shell taken from that date until April 25th. The temporary injunction has long since expired but the funds mentioned remain in the registry of the court.

■ We agree with the conclusion of the Court of Civil Appeals that the rule of state immunity from suit without its consent applies to suits under the Uniform Declaratory Judgments Act, Article 2524-1, Vernon's Annotated Texas Statutes. American Federation of Labor v. Mann, Texas Civ. App., 188 S.W. 2d 276,279, no writ history; Hoyt v. Board of Civil Service Commissioners, 21 Cal. 2d 339, 132 Pac. 2d 804; Bell Telephone Co. v. Lewis, 313 Pac. 374, 169 Atl. 571; Empire Trust Co. v. Board of Commerce & Navigation, 124 N.J.L. 406, 11 Atl. 2d 752; Borchard on Declaratory Judgments, 2d Ed., p. 374. Petitioner does not contend otherwise.

In support of its contention that this is not such a suit against the State as requires legislative permission for its main-

tenance, petitioner cites Cobb v. Harrington, 144 Texas, 360, 190 S.W. 2d 709, 172 A.L.R. 837, and Harris Co. Tax Assessor-Collector et al. v. Reed, Texas Civ. App., 225 S.W. 2d 787. The cited cases were declaratory judgment and injunction suits instituted against state and county tax assessor-collectors to obtain declaratory judgments that the plaintiffs were not subject to taxes, fees and penalties imposed by statute on certain types of business or business transactions and to enjoin the collection thereof. In both cases the state's agent was wrongfully attempting to impose statutory burdens on those to whom they did not apply. They were held not to be suits against the State. The holdings are founded on the following rule announced in Cobb v. Harrington (190 S.W. 2d 712):

"The acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, for the determination or protection of his rights, is not a suit against the State within the rule of immunity of the State from suit."

Petitioner asserts that this suit comes within the category defined in the foregoing rule. It argues that its right to take mudshell at seven cents per yard was fixed by a valid contract and that the action of the Game and Fish Commission in attempting a unilateral amendment of the contract was not lawfully authorized.

■ The rule announced in Cobb v. Harrington may not be disassociated from or taken out of context of its facts, as the opinion itself makes clear. Neither that case nor the Reed case was to compel performance of or to enforce rights arising out of a contract with a state agency made on behalf of the State in its sovereign capacity. In the latter type of case the rule announced in Herring v. Houston National Exchange Bank, 113 Texas 264, 253 S.W. 813, 814, governs. We there said:

"A suit against officers of a state, to require them to perform acts which constitute a performance of a contract by the state, is in effect a suit against the state itself. A suit against officers of a state, the purpose or effect of which is to establish the validity of a contract of the state, or to enforce through them the performance of a contract of the state, or to require acts to be performed by them which would impose contractual liabilities upon the state, is a suit against the state.

In the course of our opinion in Cobb v. Harrington, this Court expressly distinguished the result there reached from the result reached in the Herring case in these words: "This is not a suit to impose liability upon the State or compel the performance of its contract, as was Herring v. Houston National Exchange Bank, 113 Texas 264, 253 S.W. 813." See 190 S.W. 2d 712. It thus appears that the rule of Cobb v. Harrington does not apply when, as stated in the Herring case, the suit is against state officers and its purpose or effect "is to establish the validity of a contract of the state, or to enforce through them the performance of a contract of the state, or to require acts to be performed by them which would impose contractual liabilities on the state." The real question here is this: does petitioner's suit fall within the rule of the Herring case? We hold it does.

The petition asserted contractual obligations against the state and the prayer called upon the court to declare the permit to be a valid and binding contract of the state entitling petitioner to continue the taking of mudshell at seven cents per cubic yard. Indeed, petitioner had no basis for the temporary injunction it sought unless it could establish that the permit constituted a contract, binding on the state, which it could enforce. That the suit was and is one to establish the validity of a contract and to enforce contractual rights under it is made doubly clear by the pleading of the defendants to the merits in which it is asserted that the permit is not a contract but only a license, revocable or amendable at the will of the State, and that there was and is no consideration to support petitioner's claim of contract or contractual rights.

No good purpose would be served by an exhaustive review of the many cases decided by the courts of this state which have dealt with the type of question here involved. Two growing out of contract situations will be noticed.

In Imperial Sugar Co. v. Cabell, Texas Civ. App., 179 S.W. 83, no writ history, it was held that a suit in trespass to try title against members of the Board of Prison Commissioners to recover land, purchased and held for the state, on breach of a condition subsequent, was not a suit against the state within the rule of state immunity. The holding rested largely on United States v. Lee, 106 U.S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171. The holding in the latter case has been severely limited by the more recent decision of the Supreme Court of the United States in Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 93 L. Ed. 1628, 69 Sup. Ct. 1457, which will be treated at greater

length later in this opinion. But even in the Cabell case the Court recognized as sound the rule later applied in the Herring case when it said (179 S.W. 89) :

"There is a clear distinction between a suit against an officer for a wrong committed by him in the name of the state, and suits brought against an officer to prevent the exercise by the state through such officer of some act of sovereignty, or suits against an officer or agent of the state to enforce specific performance of a contract made for the state, or to enjoin the breach of such contract, or to recover damages for such breach, or to cancel or nullify a contract made for the benefit of the state."

In State v. Epperson, 121 Texas 80, 42 S.W. 2d 228, it was held that a suit against a tax collector for the recovery of money alleged to be due under a contract and to be unlawfully withheld was not a suit against the state within the rule of state immunity. The decision was also rested on the rule of United States v. Lee, supra, and the court distinguished the Herring case as follows, (42 S.W. 2d 231) :

"It is true that the district court of Hidalgo County does not possess jurisdiction to enforce the specific performance of the contract relied upon by Epperson or to award damages for any breach of said contract unless the state is a party to the proceeding. Herring v. Houston National Exchange Bank (Texas Civ. App.), 241 S.W. 524. But Epperson's suit is not one to enforce specific performance of his contract or to recover damages for the breach thereof. It is simply an action to compel an officer, as agent of the state, to pay over funds to a party who claims to be lawfully entitled thereto."

The Cabell and Epperson cases, although arising out of contract transactions, thus appear to fall into the class of cases projected by United States v. Lee, supra. In that class of cases it is held that suits for property alleged to be unlawfully or wrongfully withheld from the rightful owner by officers of the state are not suits against the sovereign itself and may be maintained without permission of the sovereign. Petitioner does not contend that the instant case falls into that class. What petitioner does contend, as heretofore noted, is that it had a valid contract for the purchase of mudshell at seven cents per yard and any unilateral effort to amend it was unlawful, and that the rule of state immunity therefore does not apply. That contention as urged in suits involving contractual rights is dealt with

by the Supreme Court of the United States in the Larson case, supra.

In the Larson case, suit was against the head of the War Assets Administration to enjoin the delivery of certain surplus coal to a third person, and for a declaration that a prior sale to the plaintiff was valid and a subsequent sale to the third person invalid. A plea of sovereign immunity was interposed. One of the reasons urged by the plaintiff for its position that the suit was not a suit against the sovereign was that the Administrator was acting unlawfully in breaching a valid contract with the plaintiff and selling the coal to another. In answer to that contention the court pointed out that where statutory auhority is conferred upon an officer or agent of the sovereign to enter into contracts on behalf of the sovereign the rule of immunity of the sovereign from suit with respect to rights and obligations arising under contracts made by him applies unless he acts *ultra vires* his authority, saying:

"* * * where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief. It is important to note that in such cases relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient * * *." (337 U.S. 689, 69 Sup. Ct. 1461, 93 L. Ed. 1636).

* * * * *

"* * * the Administrator was empowered by the sovereign to administer a general sales program encompassing the negotiation of contracts, the shipment of goods and the receipt of payment. A normal concomitant of such powers, as a matter of general agency law, is the power to refuse delivery when, in the agent's view, delivery is not called for under a contract and the power to sell goods which the agent believes are still his principal's to sell." (337 U.S. 689, 69 Sup. Ct. 1461, 93 L. Ed. 1637).

* * * * *

"* * * It is argued that an officer given the power to make decisions is only given the power to make correct decisions. If his decisions are not correct, then his action based on those de-

cisions is beyond his authority and not the action of the sovereign. There is no warrant for such a contention in cases in which the decision made by the officer does not relate to the terms of his statutory authority * * * ." (337 U.S. 689, 69 Sup. Ct. 1461, 93 L. Ed. 1638-1639).

The quoted language is peculiarly applicable to the instant case. Power to sell mudshell is conferred by statute on the Game and Fish Commission of Texas. Article 4052 provides that the Commission "shall have full charge and discretion over all matters pertaining to the sale" of mudshell and other deposits. Art. 4053d provides that with approval of the Governor the Commission may sell "upon such terms and conditions as he [it] may deem proper." There is no statutory provision governing or limiting the manner of sale. So far as the statutes are concerned the Commission may sell by contract, mutually binding on the State and the vendee, or by permit revocable and amendable at the will of the Commission. Its selection of the manner of making sales as well as its decision as to whether the manner it has followed constitutes a valid contract is the selection and decision of the State; and however incorrect the latter decision may be, a suit to test it by seeking enforcement of contract rights is necessarily a suit against the State which cannot be mantained without legislative permission.

Our quotation of portions of the opinion in the Larson case dealing with the contract phase of the case is not to be considered as an approval of the limitation imposed on the rule of United States v. Lee as that rule has been adopted and applied by the courts of this state in Imperial Sugar Co. v. Cabell, supra, and State v. Epperson, supra, a limitation vigorously questioned in the dissenting opinion of Mr. Justice Frankfurter. We have no disposition to extend or broaden the rule of immunity in this state.

■ The judgment of the Court of Civil Appeals reversing the judgment of the trial court and ordering the suit dismissed is affirmed. The money paid into the registry of the trial court was by the court's original order "to await the further order of the court." The trial court's final judgment ordered the money returned to petitioner. Inasmuch as the suit has been ordered dismissed we see no reason why the money so paid should not be returned to W. D. Haden Company, and the trial court's judgment to that effect is affirmed.

Opinion delivered January 15, 1958.