**TEXAS EMPLOYMENT COMMISSION, et al., Appellants,**

v.

**Roberto CAMARENA, et al., Appellees.**

**Nos. 14479, 14532.**

Court of Appeals of Texas, Austin.

April 16, 1986.

Rehearing Denied June 3, 1986.

Jim Mattox, Atty. Gen., Joseph W. Barbisch, Jr., Asst. Atty. Gen., Austin, for appellants.

James C. Harrington, Austin, for appellees.

Before POWERS, EARL W. SMITH and BRADY, JJ.

POWERS, Justice.

The Texas Employment Commission, its members, and the Attorney General of Texas appeal from declaratory judgments rendered in two suits brought against them by nine agricultural employees. Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Remedies Code, §§ 37.001–37.011 (1986). We will reverse the judgments below and remand to the trial court with instructions that the suits be dismissed because the underlying controversy is now moot.

## THE CONTROVERSY

The Texas Employment Commission administers the Texas Unemployment Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 5221b–1 to 24 (1971 & Supp. 1986) (hereinafter "the Act"). The Act imposes against certain kinds of employers in the State an excise tax which, when collected by the Commission, constitutes a fund from which many classes of employees in the State are paid benefits during periods when they may be unemployed through no fault of their own. The Act was passed originally in 1936. From that time until the present, the Act has never imposed the excise tax against all categories of employers and has never provided for payment of benefits to all categories of employees. One category excluded from coverage, from 1936 until recently, consisted of employers who engaged and employees who performed "agricultural labor." Art. 5221b–17(g)(5)(B); *State v. The Praetorians*, 143 Tex. 565, 186 S.W.2d 973 (1945); *Friedman v. American Surety Co.*, 137 Tex. 149, 151 S.W.2d 570 (1941); *State v. Sullivan*, 377 S.W.2d 839 (Tex.Civ.App.1964, no writ).

In 1985, however, the 69th Legislature amended the Act to provide that "farm and ranch labor" would come within the coverage of the Act effective January 1, 1986. 1985 Tex.Sess.Law Serv., ch. 67, §§ 1–2, at 244–54. The amendment originated as House Bill 32 and we shall, for convenience, refer to the amendment as "H.B. 32."

In 1984, while "agricultural labor" remained outside the coverage of the Act, nine agricultural employees and the United Farm Workers of America, AFL–CIO, a labor union, sued the Commission, its members, and the Attorney General under the Uniform Declaratory Judgments Act, alleging that the Act was unconstitutional in those provisions which resulted in the exclusion of "agricultural labor." The plaintiffs requested that the exclusion be declared unconstitutional, that the defendants be enjoined from enforcing it in the future, that the plaintiffs' suit be designated a class action under Tex.R.Civ.P.Ann. 42 (1979 & Supp. 1986), and that the plaintiffs recover their costs and reasonable attorneys fees.

In the course of the proceedings, the trial court ordered that the suit be maintained as a class action but that it be severed into two suits: one brought by the plaintiffs in their individual capacity and one as representatives of the class of agricultural employees. The validity of this order is not in issue on appeal and we express no opinion in that regard. The trial court ultimately rendered final judgments in each of the two suits, in substantially the same terms, and both judgments are now before us on appeals taken by the Commission, its members, and the Attorney General.

## TERMS OF THE TRIAL-COURT JUDGMENTS

The final judgment in the suit maintained by the plaintiffs in their individual capacities was signed May 15, 1985. Final judgment in the class-action suit was signed July 2, 1985. On July 3, 1985, notice of appeal was given by the Commission, its members, and the Attorney General. Thus, both judgments were signed and appeals were taken after the passage of H.B. 32 but before it became effective January 1, 1986.

The two judgments award the following declaratory relief: (1) those provisions of the Act excluding agricultural labor, before the passage of H.B. 32, were unconstitutional and unenforceable; (2) the effect of H.B. 32 is to supply the Act with the "minimal constitutional requirements and nothing more"; (3) the individual plaintiffs and the class members come within the coverage of the Act effective January 1, 1986; and (4) effective January 1, 1986, the earlier exclusion of "agricultural labor" shall be "inoperative and unenforceable for all purposes...."

Supplemental to the declaratory relief, the judgments enjoin the following activities by the Commission, its members, the Attorney General, and any acting under them:

(1) enforcing in any way the "agricultural labor" exclusion that was operative before January 1, 1986;

(2) enforcing in any way "any provision with respect to farm and ranch laborers or agricultural employees [that is] less inclusive or less expansive than those set out in House Bill 32 or which would prejudice, detrimentally affect, or in any way impinge upon the rights, status, and legal relations herein granted to [the individual plaintiffs] and the class members";

(3) enforcing any future amendment of the Act if the amendment should make provision for farm and ranch laborers or agricultural employees that is "less inclusive or less expansive than those enjoyed by all other employees" under the Act or

that "discriminates, invidiously or otherwise [sic], against farm and ranch laborers and agricultural employees"; and (4) "denying, prejudicing, detrimentally affecting, or in any way impinging upon the rights, status, legal relations, coverage, benefit, protection, and entitlements of the provisions of House Bill 32 or of this judgment...."

Finally, the two trial-court judgments contain several provisions under the heading "miscellaneous." These include statements to the effect that the judgments are intended to secure only the "minimal constitutional requirements" necessary to prevent "unlawful discrimination" against "farm and agricultural workers"; and, a statement that nothing in the judgments is intended to prevent enforcement of unemployment benefits "more expansive and extensive" than those contemplated by H.B. 32. Neither judgment purports to award any plaintiff money damages representing benefits unlawfully withheld by the State.

## MOOTNESS

The Commission, its members, and the Attorney General contend the controversy has become moot on appeal. We sustain the contention.

We need not discuss at length the fundamental proposition that courts exist to determine actual and existing controversies and to enforce their determinations made in that connection. They do not sit to adjudicate controversies that are or become "moot" or abstract owing to the absence of a bona fide controversy or the absence of an existing fact or right necessary to their adjudication. *See City of West University Place v. Martin,* 132 Tex. 354, 123 S.W.2d 638 (1939); *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641 (1933); *McNeill v. Hubert,* 119 Tex. 18, 23 S.W.2d 331 (1930); *Munger v. Richards,* 87 S.W.2d 797 (Tex. Civ.App.1935, writ ref'd). The mootness doctrine applies with full force to actions brought under the Uniform Declaratory Judgments Act, *supra,* as the present actions were. *Firemen's Ins. Co. of Newark,*

*N.J. v. Burch,* 442 S.W.2d 331 (Tex.1968); *California Products, Inc. v. Puretex Lemon Juice, Inc.,* 160 Tex. 586, 334 S.W.2d 780 (1960).

■ A suit may fall within the mootness doctrine for any number of reasons. Included among such reasons are two that apply in the present appeals: (1) an absence or discontinuance of any real or bona fide dispute between the litigants about the subject matter; and (2) a change in the basic law under which a pleaded controversy was or will be adjudicated. Either may result in the mootness of an appeal. An example of the first category occurs when a litigant unreservedly and voluntarily pays a disputed sum adjudged against him. *Casray Oil Corp. v. Royal Indemn. Co.,* 141 Tex. 33, 169 S.W.2d 955 (1943). Another in that category exists when a real, actual, or bona fide controversy cannot arise until the happening of a contingency and there is no allegation or contention that it has in fact occurred. *Munger v. Richards, supra.*

There exist several examples of the second category—a change in the basic law under which a pleaded controversy is required to be adjudicated. Mootness occurs in a suit to cancel an agency permit when a new statute brings all permits to an end, whether valid or not, and provides for issuance of new permits on surrender of the old. *Railroad Commission v. Texas & P. Ry. Co.,* 138 Tex. 148, 157 S.W.2d 622 (1941). A suit to enjoin an unconstitutional statute becomes moot when the Legislature enacts a new statute to the same effect that is conceded to be constitutional. *Page v. Tucker,* 288 S.W. 809 (Tex.Comm.App. 1926, jdgmt. adopted). A suit to enjoin conduct prohibited by a statute becomes moot when the statute is amended in a way that requires judicial construction to determine whether the conduct falls within the proscription of the new statute. *Clymore Co. v. Railroad Commission of Texas,* 86 S.W.2d 797 (Tex.Civ.App.1935, no writ.)

With these cases in mind, we turn to whether the controversy in the present appeals is moot insofar as it relates to the declaratory relief ordered in the trial-court judgments.

■ The judgments below declare that the Act, before its amendment by H.B. 32, was "unconstitutional and unenforceable" insofar as it purported to exclude "agricultural labor" from coverage. We hold the controversy to be moot in this regard. Whether the exclusion of "agricultural labor" was unconstitutional, as appellees contended, and whether the trial court erred in sustaining that contention, has been removed from the realm of legal controversy by H.B. 32, effective January 1, 1986. *Page v. Tucker, supra; Railroad Commission v. Texas & P. Ry. Co., supra.*

■ The judgments below declare that the Act, after its amendment by H.B. 32, is constitutional, that the "agricultural labor" exclusion terminates January 1, 1986, and that the individual and class plaintiffs come within the coverage of the amended Act on January 1, 1986. We hold these aspects of the controversy to be moot because there is no real, actual, or bona fide controversy about them. The parties *agree* in their briefs that the amended Act is constitutional, that the "agricultural labor" exclusion terminates January 1, 1986, as provided by H.B. 32, and that the plaintiffs—agricultural employees all—come within the coverage of the amended Act effective January 1, 1986.

The sole argument advanced by appellees to avoid the mootness doctrine is a novel one. Appellees contend the judgments below should be considered by this Court, and affirmed on the merits, because they represent only a fragile and narrow political, as well as judicial, victory obtained by agricultural and ranch employees. In appellees' view, unless the judgments below be affirmed by this Court, as being free of the errors assigned by appellants, the Legislature next to convene will likely move to amend the Act in a way that erodes or even withdraws the coverage so narrowly won by agricultural and ranch workers in the 69th Legislature. In this connection, appellees refer to those parts of the trial-court

judgments that purport to perpetuate the terms of H.B. 32 as constitutional minimums below which the Legislature may not fall in any future legislation on the subject.

We believe appellees' argument to be erroneous on several grounds. Among them are the following: (1) the argument erroneously imputes to the courts a power to decide a contingent and therefore a hypothetical case, or to decide a question not essential to any actual and existing controversy; (2) it erroneously presumes that a future Legislature will enact a statute that is unconstitutional; or (3) if it presumes a future enactment that is constitutional, it erroneously imputes to the courts a power to invalidate legislative acts merely because the courts find the acts to be unwise or bad policy. *See Firemen's, Ins. Co. of Newark, N.J. v. Burch, supra; State v. City of Austin*, 160 Tex. 348, 331 S.W.2d 737 (Tex.1960). We therefore reject appellees' argument.

As mentioned previously, the trial-court judgments award the individual and class plaintiffs injunctive relief in addition to the declaratory relief. The injunctive relief depends, however, upon the correctness of the declaratory relief ordered by the trial court. We hold the controversy to be moot insofar as it concerns the various aspects of the declaratory relief given in the trial-court judgments; consequently, we must also hold moot the injunctive-relief portions of those judgments.

■ Because of the mootness we have found, it is readily apparent that we may not consider on the merits appellants' contentions that the declaratory relief ordered by the trial court in these judgments is founded on legal error. Consequently, it would not be proper for us to dismiss the appeals taken from those judgments, for to do so would leave in effect the final judgments of the trial court (one of which was rendered in a class action) and these might prejudice the State in subsequent proceedings when we have not considered whether those judgments are free of the errors assigned. It is therefore proper that we should reverse the trial-court judgments, order that the suits be dismissed, and remand the litigation to the trial court for that purpose. *Danciger Oil & Ref. Co. v. Railroad Commission*, 122 Tex. 243, 56 S.W.2d 1075 (1933).

## ATTORNEYS FEES

Appellees have on their part perfected an appeal from another part of the trial-court judgments—that part wherein their claims for attorneys fees and court costs were denied by the trial court on the ground that they were barred by the doctrine of "sovereign immunity." *Director of the Dept. of Agriculture and Environment v. Printing Industries Ass'n*, 600 S.W.2d 264 (Tex. 1980). It is possible to view this part of the judgments as being severable from the remainder insofar as the issue of mootness is concerned. We shall therefore consider appellees' appeal on the merits. In doing so, we will affirm the judgment of the trial court that denied appellees' claim for attorneys fees.

■ Whether the doctrine of governmental immunity is involved or not, a fundamental rule of Texas jurisprudence governs the award of attorneys fees: they may not be awarded unless prescribed by statute for the particular kind of case or by an agreement between the parties. *First City Bank—Farmers Branch, Tex. v. Guex*, 677 S.W.2d 25 (Tex.1984); *Tenneco Oil Co. v. Padre Drilling Co.*, 453 S.W.2d 814 (Tex.1970); *New Amsterdam Cas. Co. v. Texas Industries, Inc.*, 414 S.W.2d 914 (Tex.1967). The rule *means* that a Texas court may *not* award attorneys fees in a case merely because the court feels it would be just or politic to award them. They may not be awarded on *any* judicially created basis. Moreover, an intermediate appellate court has no power to change this rule of our State's jurisprudence. What we have said in this regard sufficiently explains why we must reject appellees' contentions that attorneys fees should have been awarded in the present case based on the theory that appellees acted as "private attorneys general" in conferring a "substantial benefit" upon a large identifiable

class of individuals. We turn then to the interwoven issues of governmental immunity and the proper meaning to be assigned various statutes said by appellees to authorize the award of attorneys fees in the present cases.

■ The pleadings demonstrate that the State of Texas was not itself sued as a literal party defendant. The defendants designated in appellees' pleadings were rather the Texas Employment Commission, its individual members, and the Attorney General of Texas. They, and not the State of Texas as such, have perfected an appeal in each suit below. These suits were, however, indisputably for the purpose of controlling State action under the Act. They therefore amounted to suits "against the State" insofar as the doctrine of governmental immunity is concerned. *Director of the Dept. of Agriculture and Environment v. Printing Industries Ass'n, supra.*

■ The doctrine of governmental immunity consists of two divisions: (1) *immunity from suit* brought without legislative consent, which consent may be given by the Legislature whether or not there exists a dispute about the State's liability; and (2) *immunity from liability,* which may remain in whole or in part even though the Legislature may have consented to a particular suit against the State. Appellees were entitled to maintain their suits against the State even without legislative consent, it being their theory that the Act and official actions taken by the defendants thereunder were unconstitutional before the amendment effectuated by H.B. 32. *City of Houston v. Blackbird,* 394 S.W.2d 159 (Tex.1965). Thus, appellees are not affected by the holding in *W.D. Haden Co. v. Dodgen,* 308 S.W.2d 838 (Tex.1958), to the effect that legislative consent to be sued is ordinarily required in statutory actions brought under the Uniform Declaratory Judgments Act. We are left then to decide whether the trial court properly denied appellees' claim for attorneys fees because the State had not by statute waived its ordinary immunity from liability.

■ Appellees first contend that § 37.-009 of the Uniform Declaratory Judgments Act constitutes such a waiver. The section provides that in actions under the Uniform Declaratory Judgments Act "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." In appellees' view, this amounts to a statutory waiver of the State's ordinary immunity from liability for non-contract claims against it. (There is no governmental immunity in cases of contract claims against the State, although the State remains immune from *suit* in such cases. *See* Hartsfield, *Governmental Immunity From Suit and Liability in Texas,* 27 Texas L.Rev. 337 (1949)). We disagree with the meaning appellees infer from § 37.009.

There is in § 37.009 nothing that even remotely suggests a waiver of governmental immunity in suits brought under the Uniform Declaratory Judgments Act. When such waivers *are* made, the Legislature does so in relatively explicit terms. For example, in the Texas Tort Claims Act, it is provided that "[a] governmental unit in the state *is liable* for" sums awarded in tort actions within the limits and under the conditions prescribed in the Act. Tex.Civ. Prac. & Remedies Code, *supra,* § 101.021 (emphasis added). Chapter 103 of the same Code creates a statutory cause of action for the benefit of persons falsely imprisoned by the State. Section 103.001 provides that such "[a] person *is entitled to compensation*" from the State within the limits and under the conditions prescribed in that statute (emphasis added). There is in § 37.009 of the Uniform Declaratory Judgments Act no comparable explicit language from which a similar inference may be drawn. It therefore may not be construed to be a waiver by the State of its ordinary immunity from liability for non-contract claims. And there is, consequently, no necessity to apply the rule of strict construction to § 37.009. *See Knebel v. Capital Nat. Bank in Austin,* 518 S.W.2d 795 (Tex.1974).

Appellees contend alternatively that the State is liable for attorneys fees under the provisions of §§ 104.001 and 104.002 of the

Tex.Civ.Prac. & Remedies Code, *supra.* Those sections provide as follows:

§ 104.001. State Liability; Persons Covered

In a cause of action based on conduct described in Section 104.002, the state is liable for actual damages, court costs, and attorneys fees adjudged against:

(1) an employee, a member of the governing board, or any other officer of a state agency, institution, or department;

\* \* \* \* \* \*

§ 104.002. State Liability; Conduct Covered

The state is liable under this chapter only if the damages are based on an act or omission by the person in the course and scope of the person's office, employment, or contractual performance for or service on behalf of the agency, institution, or department and if:

(1) the damages arise out of a cause of action for negligence, except a willful or wrongful act or an act of gross negligence; or

(2) the damages arise out of a cause of action for deprivation of a right, privilege, or immunity secured by the constitution or laws of this state or the United States, except when the court in its judgment or the jury in its verdict finds that the person acted in bad faith.

The remaining sections of the statute provide: the State's liability may not exceed specified sums (§ 104.003); the Attorney General of Texas shall defend any causes of action brought under the statute (§ 104.-004); only general revenue funds may be expended by him in defense of such actions (§ 104.007); and the statute "does not waive a defense, *immunity,* or jurisdictional bar available to the state or its officers, employees, or contractors" (§ 104.008) (emphasis added). How then shall we construe this statute which *does* provide explicitly in one section that the State "is liable for ... attorneys fees adjudged against" its officers and employees, but another section pronounces with equal explicitness that nothing in the statute waives any "immunity ... available to the state or its officers

and employees...."? The apparent conflict disappears on closer examination.

It is quite apparent that the primary purpose of the statute is to require the State to defend any State employee or officer who may be sued by reason of his official conduct, and to indemnify him against any resulting liability for actual damages, court costs, and attorneys fees. The statute is primarily for the benefit of such employees and officers. It is only by indirection that one may say that the claimants against such officers and employees fall within the benefits intended by the statute. May it nevertheless be inferred that the Legislature intended by this statute to waive *in general* the State's ordinary immunity from liability to the extent of the two kinds of conduct specified in § 104.002?

 As mentioned previously, such a waiver may only be inferred from clear and unambiguous language. *Duhart v. State,* 610 S.W.2d 740 (Tex.1980). We find in § 104.001 that the State is clearly and unambiguously made "liable for actual damages, court costs, and attorney's fees *adjudged against* " its officers and employees by reason of the conduct specified in § 104.002 (emphasis added). The emphasized expression means that the liability of the State, under § 104.001, is a liability that *arises* when a State officer or employee is *adjudged liable* to a claimant. This, in itself, implies that the Legislature did not intend to create a *new* liability against the State, but to protect its employees and officers from whatever liability they had *under existing law. Texas Prison Board v. Cabeen,* 159 S.W.2d 523 (Tex.App.1942, writ ref'd). So much is then rendered absolutely clear by the express provision in § 104.008 that nothing in the statute has the effect of waiving an immunity available to the State or its officers and employees. We therefore hold that the statute does not have the effect of waiving in general the State's ordinary immunity from liability.

Our discussion under the present heading has been limited to the matter of the

State's liability for attorneys fees. We believe the State is liable for costs of court. *Glass v. Great Southern Life Ins. Co.,* 170 S.W.2d 247 (Tex.Civ.App.1943, writ ref'd w.o.m.). This liability rests upon grounds quite unrelated to the issue of governmental immunity. *See Reed v. State,* 78 S.W.2d 254 (Tex.Civ.App.1934, writ dism'd). In that connection, we order that the costs of appeal in the two suits be taxed equally between the State and appellees, leaving to the trial court's discretion on remand the matter of a fair and just assessment of the other costs of suit.

Therefore, we reverse the judgments below and remand the suits to that court with instructions that the suits be dismissed for mootness and that the trial court assess costs as it shall determine to be fair and just, as provided in § 37.009 of the Uniform Declaratory Judgments Act.