

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00032-CV

| | | |
|---|---|---|
| Mustang Special Utility District | § | From the 393rd District Court |
| | § | of Denton County (2011-60876-393) |
| v. | | |
| | § | December 21, 2012 |
| Providence Village | § | Opinion by Justice Meier |

## JUDGMENT ON REHEARING

After considering Appellee Providence Village's motion for rehearing and motion for en banc reconsideration of our opinion issued September 27, 2012, we deny both motions, withdraw our opinion and judgment dated September 27, 2012, and substitute the following.

This court has again considered the record on appeal in this case and holds that there was error in the trial court's orders. It is ordered that the orders of the trial court are reversed and the case is remanded for further proceedings consistent with this opinion.

It is further ordered that Appellant Mustang Special Utility District shall pay all costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
   Justice Bill Meier


**NO. 02-12-00032-CV**

MUSTANG SPECIAL UTILITY DISTRICT                      APPELLANT

V.

PROVIDENCE VILLAGE                             APPELLEE

----------

## FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

----------

## OPINION ON REHEARING

----------

Appellee Providence Village filed a motion for rehearing and a motion for en banc reconsideration of our opinion issued September 27, 2012. We deny both motions, withdraw our opinion and judgment dated September 27, 2012, and substitute the following.

# I. INTRODUCTION

Appellant Mustang Special Utility District appeals the trial court's orders denying Mustang's jurisdictional challenges to the claims alleged against it by Providence Village. We will reverse and remand the cause to the trial court.

# II. BACKGROUND

Mustang was formed in 1966 as a water supply corporation for northeast Denton County. In 1985, Mustang obtained a Certificate of Convenience and Necessity (CCN) to provide water service in northeast Denton County. The legislature created the Upper Trinity Regional Water District in 1989 in part to provide wholesale treated water services to cities and water distribution utilities in the Denton County area.

Located in northeast Denton County, Providence Village was developed as a master-planned community in 2000. Upper Trinity and Mustang proposed to extend a treated-water transmission line and to develop and construct a regional wastewater system in the area, but several financial obstacles stood in the way. The Denton County Commissioners Court consequently created fresh water supply districts, including Denton County Fresh Water Supply District No. 9 (the District), to facilitate the financing of the proposed water line and wastewater system. The District's service area, located within the area covered by Mustang's CCN, includes Providence Village.

In August 2001, the District entered into a participating customer contract with Upper Trinity whereby Upper Trinity agreed to provide fresh water services

4

to the District and the District agreed to install a wastewater collection system. The District agreed that it "is wholly within the water service area of [Mustang]"; that it "may own its internal water distribution system, and shall contract with [Mustang] to operate said distribution facilities for retail service within [the District's] boundaries"; and that it will "respect the service area of [Mustang] for which it has been granted a CCN, providing herein for coordination with [Mustang], with its service area and with services provided by [Mustang] to the balance of its service area."

In February 2002, Mustang and the District entered into contracts relating to water and sewer service within the District's service area. The District agreed to use water "transported . . . to the District by Mustang through . . . facilities built or to be built by [Upper Trinity] and maintained by Mustang," to build water distribution and wastewater collection facilities, and to apply for water and sewer CCNs within the District's service area. Mustang agreed to perform a schedule of services in relation to operating the water and sewer service systems. The agreements also gave Mustang the option to purchase the District's systems under certain circumstances and provided that the District "will transfer" its CCNs for water and sewer service to Mustang in the event Mustang exercises its option.

In May 2002, Mustang was converted to a special utility district, and in August 2002, the District obtained CCNs to provide water and sewer service to its service area. Mustang later obtained a sewer CCN.

In 2005, Mustang and the District entered into a "Merged, Amended, and Restated" agreement for water and sanitary sewer services pursuant to which the District agreed, among other things, to convey its sanitary sewer collection facilities to Mustang on October 1, 2011, and to lease its water distribution and storage facilities to Mustang the same day. Mustang and the District amended the 2005 agreement in October 2007 so that the District would convey (instead of lease) its water distribution facilities to Mustang on October 1, 2011.

In contemplation of the scheduled October 2011 conveyances, Mustang and the District filed an "Application for Sale, Transfer, or Merger of a Retail Public Utility" in February 2011, requesting approval from the Texas Commission on Environmental Quality (TCEQ) for the sale and transfer of the District's CCNs and facilities to Mustang. Providence Village, which had voted to incorporate in 2010, filed a protest with the TCEQ.

Providence Village sued both Mustang and the District in June 2011. It provided the following context underlying the basis of its suit:

> This dispute turns on the rights of citizens to organize themselves into a city, elect officials, and then have those elected officials determine what best meets their current needs. Years ago, two unrelated entities executed a contract mandating the transfer of water and sewer services enjoyed by the people of Providence Village to [Mustang] on October 1, 2011. According to the contract, this transfer must take place whether [Providence Village] or [the District]—acting through their elected officials—believes that such a transfer is in the best interests of their constituents. If the transfer is accomplished, neither the local district nor the Town will have control over their water and sewer services, even though much of the infrastructure was financed with bonds still being repaid by these citizens' taxes.

6

In addition to injunctive relief, Providence Village sought a declaration that the 2005 agreement (as amended by the 2007 agreement) is void for violating the reserved powers doctrine and that the District is not contractually obligated to transfer its CCNs to Mustang or to "achieve parity" with Mustang's rates.[1] Over the course of the litigation, Mustang filed a motion to dismiss, a motion for summary judgment, and a second plea arguing that governmental immunity barred Providence Village's claims against Mustang. The trial court denied each of Mustang's jurisdictional challenges, and this accelerated, interlocutory appeal followed.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2012).

---

[1]The supreme court recently described the reserved powers doctrine as follows:

> Certain powers are conferred on government entities "for public purposes, and can neither be delegated nor bartered away." Government entities cannot "cede . . . away [such powers] through contracts with others so as to disable them from the performance of their public duties."

*Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 843 (Tex. 2010) (citations omitted).

[2]The parties entered into a rule 11 agreement whereby the District agreed not to transfer the sewer collection and water distribution and storage facilities to Mustang until the trial court enters a judgment or order disposing of Providence Village's claims.

**III. DECLARATORY JUDGMENT ACTION CONTESTING VALIDITY OF 2005 AGREEMENT**

In its first issue, Mustang argues that the trial court erred by denying its jurisdictional challenges to the declaratory judgment action alleged against it by Providence Village. Specifically, Mustang contends that governmental immunity bars Providence Village's claim because any attempt by Providence Village to invalidate the 2005 agreement between Mustang and the District impermissibly seeks to control state action. According to Mustang, "declaratory judgment actions seeking to '*invalidate*' a contract are suits tantamount to *controlling state action* when alleged against the state and cannot be maintained absent legislative intent to waive immunity."

Providence Village acknowledges that a declaratory judgment action that seeks to establish a contract's validity, to enforce performance under a contract, or to impose contractual liability is barred by governmental immunity because such a suit attempts to compel and control state action. But it argues that it does not seek to accomplish any of those actions by its declaratory judgment action, and it does not contend that Mustang and the District had no right or authority to contract (an *ultra vires* claim). Instead, Providence Village "seeks only a judicial declaration as to the validity of the contract under the Reserved Powers Doctrine." According to Providence Village, "if [declaratory judgment actions] to determine the validity of a statute or ordinance and suits to construe a contract or statute . . . are permissible, then there is no principled reason why a suit such as

this one, which *contests the validity of a contract* under the same section, would not be permissible." [Emphasis added.]

## A.    Standard of Review

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). If a court lacks subject matter jurisdiction in a particular case, then it lacks authority to decide that case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) (reasoning that subject matter jurisdiction is essential to the authority of a court to decide a case). The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Id.* at 446. Whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

## B.    Governmental Immunity

Governmental immunity involves two issues: whether the State has consented to suit and whether the State has accepted liability. *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). Immunity from suit is jurisdictional and bars suit unless the State expressly waives immunity or consents to the suit. *Id.*; *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Here, it is undisputed that Mustang is a political subdivision of the State of Texas. Therefore, it enjoys governmental immunity

9

from suit, unless its immunity has been waived. *See Ben Bolt-Palito Blanco Consol. ISD v. Tex. Political Subdiv./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006).

**C.    Governmental Immunity Bars Providence Village's Declaratory Judgment Action**

The purpose of the Uniform Declaratory Judgments Act (UDJA) is to establish existing "rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 2008). Section 37.004(a) specifically provides as follows:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

*Id.* § 37.004(a) (West 2008). The UDJA is not a grant of jurisdiction; it is a procedural device for deciding cases already within a court's jurisdiction. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996). Consequently, immunity will bar an otherwise proper UDJA claim that has the effect of establishing a right to relief against the State for which the legislature has not waived immunity. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011).

The law is clear that the UDJA waives governmental immunity (1) for claims challenging the validity of an ordinance or statute and (2) for *ultra vires* claims against state officials who allegedly act without legal or statutory authority

or who fail to perform a purely ministerial act. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 & n.6 (Tex. 2009); *IT-Davy*, 74 S.W.3d at 855. Here, Providence Village's request for a declaration that the 2005 agreement is void for violating the reserved powers doctrine does not challenge the validity of an ordinance or statute, and Providence Village expressly disavows any attempt to allege an *ultra vires* claim. Thus, Mustang's governmental immunity is not waived under these authorities.

In addition to clarifying when the UDJA waives governmental immunity, the supreme court has explained that governmental immunity *bars* a request for declaratory relief against a governmental entity (1) that constitutes a suit to recover money damages or (2) that seeks to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities— actions that effectively control state action. *See IT-Davy*, 74 S.W.3d at 855–56; *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 78–79, 308 S.W.2d 838, 840–41 (1958). While there is no contention that Providence Village's claim under the UDJA is a disguised attempt to recover money damages, Providence Village does confirm that it seeks a declaration "as to the validity" of the 2005 contract under the reserved powers doctrine. We must therefore decide whether Providence Village's request for a validity determination of the 2005 agreement falls within the scope of the authorities holding that a request for declaratory relief that seeks "to establish a contract's validity" is barred by governmental immunity.

11

*See IT-Davy*, 74 S.W.3d at 855–56; *W.D. Haden*, 158 Tex. at 78–79, 308 S.W.2d at 840–41.

*W.D. Haden* is instructive. There, W.D. Haden had a permit issued by the Texas Game and Fish Commission to take mudshell from Galveston Bay at a monthly cost of seven cents per cubic yard of mudshell removed. *W.D. Haden*, 158 Tex. at 76, 308 S.W.2d at 838–39. After the Commission adopted a resolution increasing the price from seven cents to ten cents per cubic yard of mudshell removed, W.D. Haden sued the members and the executive secretary of the Commission. *Id.* In addition to injunctive relief, W.D. Haden sought declaratory relief that it had a binding contract with the State to pay only seven cents per cubic yard for mudshell and that it was entitled to pay that amount through the term of the agreement. *Id.* at 76, 308 S.W.2d at 839. Concluding that the suit was barred by immunity, the supreme court illuminated the distinction between a suit against a state official complaining of the official's unauthorized actions, which is not a suit against the State and, therefore, not barred by immunity, and a suit against a state official to compel performance of or to enforce rights arising out of a contract with a state agency made on behalf of the State in its sovereign capacity, which is a suit against the State and, therefore, is barred by immunity. *Id.* at 78, 308 S.W.2d at 840. The supreme court cited with approval the following language from another case:

> There is a clear distinction between a suit against an officer for a wrong committed by him in the name of the state, and suits brought against an officer to prevent the exercise by the state

through such officer of some act of sovereignty, or suits against an officer or agent of the state to enforce specific performance of a contract made for the state, or to enjoin the breach of such contract, or to recover damages for such breach, *or to cancel or nullify a contract made for the benefit of the state.*

*Id.* at 80, 308 S.W.2d at 841 (emphasis added). The supreme court concluded,

[The Commission's] selection of the manner of making sales as well as its decision as to whether the manner it has followed constitutes a valid contract is the selection and decision of the State; and however incorrect the latter decision may be, a suit to test it by seeking enforcement of contract rights is necessarily a suit against the State which cannot be maintained without legislative permission.

*Id.* at 82, 308 S.W.2d at 842. Thus, just as a suit to establish the *validity* of a contract entered into by the state is barred by immunity, the supreme court indicated that a suit to *invalidate* a contract made for the benefit of the state is barred by governmental immunity. *Id.* at 78–80, 308 S.W.2d at 840–42.

In its motion for rehearing, Providence Village contests *W.D. Haden*'s reasoning, arguing that unlike a suit to *validate* a contract made for the benefit of the state, a suit to *invalidate* a contract made for the benefit of the state is not barred by immunity because while the former constitutes an attempt to control state action, the latter does not. We disagree. The distinction between a suit to validate a contract and a suit to invalidate a contract lies not in the control of state action, but in the type of state action that the suits seek to control. While a suit to validate a contract attempts to compel performance of contractual obligations, a suit to invalidate a contract ultimately seeks to compel non-performance of once-binding contractual obligations. Both suits thus attempt to

13

control state action, albeit different forms of state action. *See Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 514 (Tex. App.—Austin 2010, no pet.) (describing a suit that seeks to control state action as one that "seeks to restrain the State or its officials in the exercise of discretionary statutory or constitutional authority").

Providence Village additionally argues in its motion for rehearing that our reliance on *W.D. Haden* is misplaced because the part of the opinion reasoning that a suit to invalidate a contract made for the benefit of the state is barred by governmental immunity is dicta. As we have previously explained, it is well established that as an intermediate appellate court, we are bound by the pronouncements of the supreme court; it is not our function to abrogate or modify established precedent. *See Scoresby v. Santillan*, 287 S.W.3d 319, 324 (Tex. App.—Fort Worth 2009), *aff'd*, 346 S.W.3d 546 (Tex. 2011). Consequently, we decline Providence Village's implied invitation to consider ourselves bound by only part of *W.D. Haden*. Until we are given further direction by the supreme court, we refuse to depart from *W.D. Haden*'s unambiguous pronouncement that a suit to invalidate a contract made for the benefit of the State is barred by governmental immunity.

Moreover, a similar construction of *W.D. Haden*'s reasoning has been applied by several other appellate courts. In *Texas Logos, L.P. v. Texas Department of Transportation*, TxDOT had awarded a logo sign contract to Media Choice to operate a road sign program that had previously been implemented by

14

Texas Logos. 241 S.W.3d 105, 109 (Tex. App.—Austin 2007, no pet.). Texas Logos sued TxDOT and sought a declaration under the UDJA that the contract entered into between Media Choice and TxDOT was void because TxDOT had violated several procurement statutes during the bidding process. *Id.* On appeal, TxDOT argued that Texas Logos's suit was barred by sovereign immunity "because they ultimately seek to invalidate the logo sign contract, a remedy that would 'control state action.'" *Id.* at 119. The appellate court agreed. *Id.* It mentioned the rule that a suit seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities is a suit against the state and—citing *W.D. Haden*—reasoned that the "Texas Supreme Court has historically regarded these immunity principles as also barring suits *to cancel or nullify a contract made for the benefit of the state.*" *Id.* at 119–20 (emphasis added). Thus, Texas Logos's UDJA claim, which "explicitly attack[ed] an existing contract with the state," was barred by immunity. *Id.* at 121; *see Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 908–09 (Tex. App.— Houston [1st Dist.] 2007, pet. denied) (holding that requests for declarations concerning invalidity of agreement "fall squarely within the . . . category of declaratory-judgment claims identified in *IT-Davy* [claims to establish a contract's validity] and thus fall outside the trial court's subject-matter jurisdiction"); *see generally Lower Colo. River Auth. v. Riley*, No. 10-10-00092-CV, 2011 WL 6956136, at *6 (Tex. App.—Waco Dec. 28, 2011, no pet.) (mem. op., not designated for publication) (reasoning that request for declaratory relief that

15

attempted to nullify the assignment of an interest in an easement implicated governmental immunity because it sought to control political subdivision's actions).

One other aspect of the *Texas Logos* opinion is noteworthy. As additional support for its holding that the suit to invalidate the TxDOT agreement was barred by immunity, the court observed that "[s]uits to nullify a contract made for the benefit of the state would likewise implicate sovereign immunity principles as currently articulated by the Texas Supreme Court," stating,

> The contemporary rationale or justification for sovereign or governmental immunity is to protect state resources from the costs of paying judgments and defending against them so they can instead be used in accordance with the policy and budgetary directives of the legislature or local governments. Contracts are a well-established means through which the state or local governments effectuate their policy directives regarding governmental functions. Furthermore, contracts may provide financial benefits for governmental entities, and thus, will have implications for budgetary and appropriations processes. Such is the case with the logo sign contract, which, as TxDOT observes, guarantees it several million in minimum payments during the contract term. By interfering with these policy and budgetary decisions regarding the use of state resources, a suit to invalidate the logo sign contract implicates sovereign immunity.

*Tex. Logos, L.P.*, 241 S.W.3d at 120 (citations omitted).

Providence Village asks us in its motion for rehearing to reconcile our holding in this case with our opinion in *City of Crowley v. Ray*, No. 02-09-00290-CV, 2010 WL 1006278, at *3–7 (Tex. App.—Fort Worth Mar. 18, 2010, no pet.) (mem. op.). *City of Crowley* is inapposite because none of the declarations

16

sought in that case attempted to invalidate a contract made for the benefit of the State. *See id.* at *1 (listing requested declarations).

The facts of this case fall squarely within the purview of *W.D. Haden*'s reasoning and *Texas Logos*'s holding. Therefore, we are both compelled by the supreme court's reasoning and convinced by the appellate court's holding to conclude that Providence Village's UDJA claim against Mustang to invalidate the 2005 agreement with the District is barred by governmental immunity. Providence Village's suit pursuing a declaration that the 2005 agreement is invalid seeks to control or compel state action, and the "contemporary rationale or justification" supporting governmental immunity—protecting state resources from the costs associated with litigation so that they can be allocated as directed by the legislature or local government, including by executing contractual agreements for the benefit of the state—applies equally to this case. *See W.D. Haden*, 158 Tex. at 79–80, 308 S.W.2d at 841.

Accordingly, we hold that the trial court erred by denying Mustang's challenges to Providence Village's UDJA claim on the basis of governmental immunity. We sustain Mustang's first issue. We need not address Mustang's second and third issues. *See* Tex. R. App. P. 47.1.

## IV. CONCLUSION

Having sustained Mustang's dispositive first issue, we reverse the trial court's orders denying Mustang's jurisdictional challenges to Providence Village's UDJA claim and render judgment dismissing that claim for lack of subject matter

17

jurisdiction. Providence Village argues in its motion for rehearing that it is prepared to file an amended petition alleging various constitutional claims against Mustang. Therefore, we remand this cause to the trial court to allow Providence Village an opportunity to plead those claims. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) (reasoning that litigant deserves opportunity to amend pleadings if defects can be cured).


                                        BILL MEIER
                                        JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DELIVERED: December 21, 2012