Max COURTNEY, Appellant,

v.

The UNIVERSITY OF TEXAS SYSTEM, the University of Texas at Arlington, and Dr. W.A. Baker, Individually and in his Official Capacity, Appellees.

No. 2–89–250–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 28, 1991.

Rehearing Overruled May 21, 1991.

---

1. Art. 5532, Tex.Rev.Civ.Stat.Ann. (1925).

Brender & Colosi, and Art Brender, Fort Worth, for appellant.

Jim Mattox, Atty. Gen., and Matthew L. Trevena, Asst. Atty. Gen., for appellees.

Before WEAVER, C.J., and DAY and JOE SPURLOCK, II, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This appeal is from the granting of appellees' Motion for Summary Judgment in

a breach of contract suit denying recovery to appellant, Max Courtney. He alleged a breach of contract for termination of his position as a lecturer at the University of Texas at Arlington. The trial court held that appellees were entitled as a matter of law to sovereign immunity from suit and had not waived immunity. Courtney appealed. We find the court committed error. The judgment is reversed.

Courtney grouped his first three points of error together as one. We will consider them the same as they were argued. There are three separate appellees, but they have submitted their argument and taken a position under one brief. Dr. Baker as Vice–President of Academic Affairs at the University was the person responsible to place Courtney's annual appointment before the Board of Regents.

Courtney argues in three points of error that the trial court erred by granting the Motion for Summary Judgment on a theory of sovereign immunity, because: 1) he is entitled by law to enforce a contract against both the state and its agents who wrongfully terminated his employment; and 2) that he is entitled to bring an action for relief under the Declaratory Judgments Act; and 3) he is entitled to trial on his claim that certain unlawful actions were taken against him, notwithstanding the state's sovereign immunity, if any. He complains in point of error four that there are questions of fact concerning his pleadings for negligence, due process, negligent misrepresentation, detrimental reliance, and contract which bar granting of a summary judgment. We sustain his points of error three, four, and five, six, seven, and eight (being relative to the issues in three and four).

The trial judge states in the judgment that he considered appellees' Motion for Summary Judgment with supplement; the Supplemental and Second Supplemental Motion for Summary Judgment; and the pleadings and argument of counsel. The court ordered that all causes of action against all of the appellees be dismissed with prejudice. We have reviewed the motions. Although the judgment declares that the motions are "good and should be granted in all respects," we will not address all of them, but will discuss only those that are improperly granted.

In considering a Motion for Summary Judgment, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Company*, 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non movant and any doubts resolved in his favor. *Montgomery*, 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American*, 391 S.W.2d at 47.

The substance of the first four points is that the court erred in granting the motions for summary judgment and erred in ruling that no basis at law existed for recovery by contract or otherwise. The key portions of the motions were: 1) that the University of Texas System and the University of Texas at Arlington and Dr. Baker acting in his official capacity are immune from suit without prior consent to be sued because of the doctrine of sovereign immunity, and 2) that appellant held no property interest in his employment, therefore failing to renew his year-to-year contract without a hearing did not violate any due process.

The Supplemental Motion for Summary Judgment included consideration of factual matters such as appellant being charged "with knowledge that all faculty appointments are subject to approval of the Board." The remainder of the Supplemental Motion for Summary Judgment claimed immunity for Dr. Baker's actions in his official capacity under the doctrine of sovereign immunity and further under the doctrine of "quasi-judicial immunity." The Supplemental Motion also contained appellees' argument that they were entitled to summary judgment on appellant's newly added claims of fraud and negligent misrepresentation.

In their Second Supplemental Motion for Summary Judgment, appellees maintained that appellant's additional claim in his Second Amended Original Petition of detrimental reliance should be denied on the same basis as his claims for fraud and negligent misrepresentation. We will not discuss these grounds as we need only address the critical question of sovereign immunity, and the question of whether or not there is a factual issue of the existence of some other actionable matters between appellant and appellees (as raised in points of error three, four, five, six, and seven).

■ The basis of Courtney's claim is an employment letter written to him in 1980. He was offered an appointment with the University of Texas at Arlington as a lecturer specifically *without tenure.* The offer was for a year-to-year renewable contract which nevertheless contained a promise that the contract *would be renewed each year* so long as his performance was satisfactory. The official title bestowed was "Lecturer." The entire letter is set out as an appendix to this opinion. Courtney accepted the offer and taught for several years.

Another provision of the letter provides: "This will be a *regular on-going faculty appointment* and you will be entitled to all of the vacation, sick leave *and other benefits of such a faculty appointment* [emphasis added]." It is apparent from the document that there are factual questions concerning Courtney's contractual rights.

The letter clearly says the appointment is "non-tenure." The rules of the Board of Regents provide for who may and who may not get tenure and for what might be called "tenure-track" (probationary) appointments. While, the letter to Courtney does not put him into any of the categories of teaching employees covered by tenure or probationary tenure under the Board's rules, he is a faculty member, with benefits, and employment renewable each year upon satisfactory performance.

His contract was not renewed for the fall semester in 1986, nor thereafter. His termination notice (another letter) *does not* allege his performance was unsatisfactory. Courtney maintains he has a "tenure-like" status, and is entitled to a hearing. We agree.

The most applicable of the Board's rules we have considered in this case are: Rules and Regulations of the Board of Regents of the University of Texas System, Part One, Chapter III, Sections 1.8, 1.81, 1.83, 1.84, 6.1, 6.2, 6.21, 6.23, 6.25, 6.3, and 6.8 (Board of Regents 1979). The two most important rules affecting Courtney's status as a "non-tenured" faculty member are:

6.25 All faculty appointments are subject to the approval of the Board. No nontenured member of the faculty should expect continued employment beyond the period of his or her current appointment as approved by the Board. Any commitment to employ a nontenured member of the faculty beyond the period of his or her current appointment shall have no force and effect until approved by the Board.

6.8 In the event of decision not to reappoint a nontenured faculty member, written notice will be given him or her not later than March 1st of the first academic year of probationary service if the appointment expires at the end of that academic year, or not later than December 15th of the second academic year of probationary service if the appointment expires at the end of that academic year. After two or more academic years written notice shall be given not later than August 31st that the subsequent year

will be the terminal academic year of appointment. The notice required by this Section is not applicable where termination of employment is for good cause under Section 6.3 above.

By the Board's rules the only faculty entitled to continuous employment are those with tenure or on probationary status. The question of exactly what type employment Courtney had, and for how long, appears to us to be a mixed question of "fact and law." Clearly Courtney would be entitled to resolution of the facts before a court could hold as a matter of law that he had no enforceable contract. In the matter of the enforcement of a contract, as a matter of law, summary judgment could not be granted on the basis that no contract of "tenure-like" effect was in force. Arguably, the promise to Courtney of continuing faculty appointment created a tenure-like position and, under the provisions of the Board's rules shown above, he was entitled to one year's notice of intent not to renew. His contract had already extended beyond two years having been renewed annually from 1980 to 1986. Additionally there is a question of whether or not the Board's annual re-appointment of Courtney was in any way an approval or acknowledgment of the contents of the letter.

The depositions considered by the court established that the letter was furnished to Courtney and that in reliance upon the letter he left a fairly stable position of employment which had opportunity for future promotion. He devoted the majority of his activities from 1980, until he was terminated in 1986, to teaching and the development of the program for which he was hired to teach at the University of Texas at Arlington. For purposes of this opinion, it is not necessary to review in great detail the different deposition testimony and affidavits furnished by individuals. There is a fact question concerning the rights Courtney may have under his contract. Nevertheless, appellees argue that, as a matter of law, the University of Texas at Arlington had no obligation to either notify appellant of his termination, or to continue his employment for one year beyond the date of termination (relying upon the rules of the Board of Regents of the University of Texas). We disagree with appellees' argument and must reverse the judgment. We hold the doctrine of sovereign immunity does not control this case.

■ Under the doctrine of sovereign immunity, a suit against the University of Texas system and the University of Texas at Arlington together with Dr. Baker acting under their authority is a suit against the state. *See generally Herring v. Houston Nat. Exch. Bank*, 113 Tex. 264, 253 S.W. 813 (Tex.1923); *Texas Technological College v. Fry*, 278 S.W.2d 480 (Tex.Civ. App.—Amarillo 1954, no writ); and *Walsh v. University of Texas*, 169 S.W.2d 993 (Tex.Civ.App.—El Paso 1942, writ ref'd). Appellees also rely upon certain common-law doctrines contained within a number of case decisions of the courts of this state to support their argument that before maintaining suit in contract against either of them, Courtney must have gotten permission to sue the state, or a waiver of the state's immunity from suit. We note in particular that the matter in dispute in *Texas Technological* came again to the Amarillo Court of Civil Appeals *after* the complainant obtained permission to sue the state in the interim. *See Texas Technological College v. Fry*, 288 S.W.2d 799 (Tex. Civ.App.—Amarillo 1956, no writ).

It is not disputed in this case that Courtney did not obtain legislative permission to sue the state. It is the position of appellees that even if Courtney had a contract for future employment, which they deny he had, any attempt to enforce such a contract without legislative permission to sue is barred by the doctrine of sovereign immunity. If this were a pure question of a contractual claim, appellees might be correct.

■ One of the best discussions of this doctrine of sovereign immunity in state contractual matters is a clear statement by the Supreme Court of Texas in the case of *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838 (Tex.1958). Justice Calvert, in an action that was instituted

against members and the executive secretary of the Texas Game and Fish Commission by a company claiming to have either a permit or a license under its authority, discussed the question of whether or not permission to sue the state was required before the action was brought. The claim for declaratory judgment relief was based upon the Game and Fish Commission's raising the fee the state charged for removal of mudshell clam from the Gulf of Mexico during the time before the company's current permit at a lower fee expired. The contention was that plaintiff had either a contractual right capable of being sued upon, or alternatively could continue to perform at the lower fee based upon its current regulatory permit. In any event, the issue was brought to be determined by a court. Justice Calvert noted that:

> So far as the statutes are concerned the Commission may sell by contract, mutually binding on the State and the vendee, or by permit revocable and amendable at the will of the Commission. Its selection of the manner of making sales as well as its decision as to whether the manner it has followed constitutes a valid contract is the selection and decision of the State; and however incorrect the latter decision may be, *a suit to test it by seeking enforcement of contract rights is necessarily a suit against the State which cannot be maintained without legislative permission.*

*Id.* 308 S.W.2d at 842 (emphasis added).

It may be, and other cases have held, that this position is an unfair one for the court to take in regards to people who have contracts with the state, its agencies or departments. However, our duty is not to discuss the history and applicability of the doctrine of sovereign state immunity, nor to expound upon any perceived unfairness in holding that the state, while making binding, enforceable contracts, may nevertheless rely upon its sovereign immunity from suits unless it first gives its permission to be sued. It may be that the legislature should enact a "contract claims act" to generally waive such immunity, but that is not a proper subject of speculation by this court.

An excellent discussion of the state's obligations when it does contract is given by our supreme court in the case of *Fristoe v. Blum*, 92 Tex. 76, 45 S.W. 998 (Tex.1898) wherein Justice Brown observed:

> It is well settled that so long as the state is engaged in making or enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign, and has prerogatives which do not appertain to the individual citizen; but when it becomes a suitor in its own courts, or a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of an individual.

*Id.* 45 S.W. at 999.

What neither Justice Brown nor the cases on which he relies in *Fristoe* discuss is that although the state is subject to the same contractual law which governs individuals, the state nevertheless possesses an *immunity from suits* upon contract in which it has not given its consent to be sued.

We commend the decision to those who wish to discover what the obligations of the state are in regards to contracting, and to what extent the state is bound to its promises, however, the opinion is not helpful in determining *what procedure must be followed* for a citizen to sue the state in its courts upon a claimed breach of the contract by the state or one of its officers. We have found no general law waiving the state's immunity from suit where liability is sought against the state for breach of contract.

After an exhaustive review of the authority cited by both appellees and appellant in this matter, we conclude that permission of the state is necessary to maintain a suit for breach of contract against the state. If this claim by Courtney is based upon a contractual right only, then his suit is barred without his obtaining prior permission for filing the suit.

The supreme court has held:

> A suit against officers of a state, to require them to perform acts which constitute a performance of a contract by

the state, is in effect a suit against the state itself. A suit against officers of a state, the purpose or effect of which is to establish the validity of a contract of the state, or to enforce through them the performance of a contract of the state, or to require acts to be performed by them which would impose contractual liabilities upon the state, is a suit against the state.

*Herring*, 253 S.W. at 814. Clearly, one purpose of Courtney's suit is to establish the validity of his contract for future employment, and to enforce through Dr. Baker and the Board of Regents of the University System his contractual rights and either continue employment, or be recompensed in damages. However, the basis of his suit does not rest upon contractual grounds alone, for we must consider the claimed divestment of Courtney's property right in his job.

The supreme court has said that a suit not seeking to impose liability upon the state nor to compel performance of a contract, nor one which in essence is for the recovery of money from the state, nor one in which a judgment obtained would be satisfied by the payment of funds from the state treasury, *but which is for the purpose of obtaining* declaratory *relief* seeking *to determine whether certain public officials acting wrongfully* and without legal authority is not an action against the State. *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (1945). The court further held:

> The acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, for the determination and protection of his rights, is not a suit against the State within the rule of immunity of the State from suit.

*Id.* (citations omitted).

*Cobb*, therefore, is in agreement with *Herring* that suits upon contracts, or ones to recover money from the state, or to impose a financial obligation upon the state treasury, are suits against the state. *Cobb* points out that suits against state officials

who have acted *wrongfully* and without legal authority are *not* against the state. Courtney alleges that Dr. Baker's act in *not* renewing the contract is unlawful, and he alleges actions against Dr. Baker individually in tort. A successful suit against Dr. Baker may *incidentally* result in a money judgment against the state, *but* that is a corollary result only, not the purpose of the suit.

This sort of complaint has been addressed before in Texas. In 1915 the Galveston Court of Civil Appeals held:

> [t]here is a clear distinction between a suit against an officer for a wrong committed by him in the name of the state, and suits brought against an officer to prevent the exercise by the state through such officer of some act of sovereignty, or suits against an officer or agent of the state to enforce specific performance of a contract made for the State, or to enjoin the breach of such contract, or recover damages for such breach, or to cancel or nullify a contract made for the benefit of the state.

*Imperial Sugar Co. v. Cabell*, 179 S.W. 83, 89 (Tex.Civ.App.—Galveston 1915, no writ). This clear distinction spoken of by Chief Justice Pleasants is present in the case on appeal. Part of this suit is against an officer for a wrong committed by him in the name of the state. The wrong in *Imperial Sugar Co.* was a claim of wrongful taking of real property by officers of the state, and a suit was filed in trespass to try title. The court clearly distinguishes the case from a suit upon ordinary contract based upon a dispute of fulfillment of the contractual terms for payment, or the like.

In this case, Courtney has alleged that Dr. Baker acted wrongfully, negligently, and even willfully to harm him, and there is no summary judgment evidence to refute these claims. The summary judgment evidence raises questions of the meaning of the promise in Courtney's contract. The evidence *may* support an action for damages for breach *as well as* raise several questions concerning Dr. Baker's actions and the intentions of the school in making the contract.

Courtney's arguments are that he has a contract claim *and* that the appellees interfered with his right to due process and his property right in the contract by terminating his position. In *W.D. Haden v. Dodgen,* the supreme court noted that suits for *property alleged to be unlawfully or wrongfully withheld* from the rightful owner by officers of the state *are not suits* against the sovereign itself and may be maintained without permission of the sovereign. *W.D. Haden,* 308 S.W.2d at 841. The supreme court in *W.D. Haden* and the appeals court in *Imperial Sugar Co.* both relied upon *United States v. Lee,* 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882) to recognize the clear right of a citizen to seek redress of a *wrongful* taking of his property.

Courtney argues that a recent Dallas Court of Appeals case is also authority to reverse the summary judgment upon the issue of failure to obtain consent for suit against the state upon the contract theory alone. He notes the court held:

the sovereign immunity doctrine does not apply to contracts made by the State, or any of its agencies under our Constitution, nor may legislative permission be required as a hurdle to a citizen's right to recover for his property, real or personal, taken by the State, its agencies, or an independent school district.

*Industrial Constr. v. DeSoto Ind. Sch. D.,* 785 S.W.2d 160, 163 (Tex.App.—Dallas 1989, no writ). This holding is in direct contradiction to *W.D. Haden, Cobb,* and *Herring* and we must decline to follow it, not because of faulty reasoning, nor because the cases it appears to follow might lead to the conclusion it reaches, but simply because in our opinion *W.D. Haden* clearly holds otherwise, and has not been overturned by our supreme court, and is not mentioned or distinguished in *DeSoto.*

The facts in *DeSoto* do not require the holding that sovereign immunity does not apply to the state's contracts, for the holding rests upon a *wrongful* taking of labor, materials and equipment without payment by the school district. This wrongful taking of property, from *Imperial Sugar Co.*

forward, has been held to be actionable without the state's prior permission for suit. The language in *DeSoto* that "the sovereign immunity doctrine does not apply to contracts made by the State, or any of its agencies" is not supported by authority and is not necessary to the decision and is dicta, therefore not binding upon this court. We hold that suit upon a contract claim against the state still requires permission from the state to be maintained. Accordingly, we overrule Courtney's first two points of error.

Remaining for us to decide is the applicability of Courtney's due process and constitutional claims. As noted above, he claims the acts of Dr. Baker in terminating his employment, by failing to carry out the terms of the employment letter, are acts which interfered with his property right without due process and give rise themselves to an independent cause of action other than the contract claim. We agree that a claim is presented to the court.

The actions of Dr. Baker, and the question of whether or not his actions are illegal, or ultra vires, is alleged in the pleadings as a claimed tortious wrong in not renewing, or negligence or willful failure to inform the Board of Courtney's special contractual status. Courtney argues he was denied due process, in being denied a hearing on his claim either with the Board or at a trial. These are claims distinct from his claim of breach of contract by the state.

The Tyler Court of Appeals has addressed an individual's liability thus: "In [a] civil rights context the individual defendants, as state officers, enjoy only a qualified immunity. Such an official is not immune from liability if his conduct clearly violates an established statutory or constitutional right of which a reasonable person would have known. [Citations omitted.]" *Adams v. Myers,* 721 S.W.2d 447, 449 (Tex. App.—Tyler 1986, no writ).

A claim almost identical in relevant respects to Courtney's has been addressed before in Texas. In 1979, in *Martine v. The Board of Regents, State Sr. College,* 578 S.W.2d 465 (Tex.Civ.App.—Tyler 1979, no writ) the Tyler court considered the

interest a college professor had in his "de facto" tenure, when he had been denied continuation of that tenure. Although writing specifically upon the right to appeal, the Tyler court nevertheless addressed the due process question involved in property rights of professional tenure. The appellant in that case raised the point that *legislative permission to sue the state was not required* as he *believed* he had a tenured faculty position and an expectancy of continued employment thus establishing a property right. A similar argument is made by Courtney that he has rights based upon "tenure-like" considerations.

The Tyler court held: "tenure ... is a vested property right, the denial of which gives [Martine] an inherent right of appeal to the courts despite a lack both of consent by the Legislature and of specific statutory provisions allowing judicial review of decisions by the Board." *Id.* at 470. We agree with the Tyler court, and note that while Courtney's claim of tenure is tenuous, *nevertheless*, a right to test that claim *before* the Board and in the courts must be accorded him. Courtney clearly *does not have* tenure, yet what he does hold must be determined. To hold he may only test this right as a "breach of contract" is to deny him due process.

We have examined the case authority relied upon in *Martine,* and agree with the conclusion. In *Martine* the court paraphrased portions of two United States Supreme Court cases which are almost directly on point with the current case on appeal. The court in *Martine* said that the United States Supreme Court held generally that a person's interest in a governmental benefit is a property interest for due process purposes if there are such rules or mutually explicit understandings that support a claim of entitlement to the benefit, and that a person may invoke that at a hearing. *Id.* at 470.

The two cases that the *Martine* court relied upon and that this court finds dispositive of this case are *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and its companion case, *Board of Regents of State Colleges v. Roth,* 408 U.S.

564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Both of those cases involve an appeal by a college professor who had been terminated from employment. Speaking about the teaching profession and about property rights to employment in general, the Supreme Court noted in *Roth* that in the area of public employment, a public college professor dismissed from an office held under tenure provisions and college professors dismissed during the terms of their contracts have interest in continued employment that are safeguarded by due process. *Id.* 92 S.Ct. at 2709. Of particular interest the court continued in *Roth,* saying that the principle "proscribing summary dismissal from public employment without hearing or inquiry required by due process" also applied to a teacher recently hired *without tenure or a formal contract,* but nonetheless with a clearly implied promise of continued employment. *Roth,* 92 S.Ct. at 2709 citing *Connell v. Higgenbotham,* 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418 (1971) (emphasis added). We have precisely this circumstance present before us in the case of Courtney's contract.

*Roth* continues:

Certain attributes of "property" interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to

those benefits. Thus, the welfare recipients in *Goldberg v. Kelly,* [397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)] had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so.

*Roth,* 92 S.Ct. at 2709.

It is clear in the case on appeal that Courtney has more than an abstract need or desire for the benefit. He has more than a simple unilateral expectation of it; he has at least an arguable claim of legitimacy to the entitlement to his employment. He was promised that his contract would be renewed so long as he continued to perform satisfactorily. It may be, to paraphrase the old promise made to certain Native Americans, that he would be employed so long as "the grass grows and the wind blows," yet even that type of promise may, under the circumstances of negotiation in which Courtney was involved, be an actionable promise, a legitimate claim of a property interest in job tenure.

The property interest that Courtney may have comes under a claim of benefit arising under the apparent authority of the office of Dr. Baker to extend to Courtney the contract which was extended. In *Sindermann,* the Supreme Court made the following pronouncement.

> A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient "cause" is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a "property" interest in reemployment....
>
> A teacher, like the respondent, who has held his position for a number of years, might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure.

Just as this Court has found there to be a "common law of a particular industry or of a particular plant" that may supplement a collective-bargaining agreement, *Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 [(1960)] so there may be an unwritten "common law" in a particular university that certain employees shall have the equivalent of tenure.

*Sindermann,* 92 S.Ct. at 2700.

In the case on appeal, Courtney has alleged the existence of certain rules of the Board of Regents and understandings, evidenced by the letter (appendix), which created in him the expectation of future employment subject to dismissal only for cause. These were promulgated and fostered by the state officials involved and they may justify a legitimate claim of entitlement to continued employment, especially as there was evidence that his performance was satisfactory. In accordance with the conclusion of United States Supreme Court in *Sindermann,* we hold that Courtney must be given an opportunity to prove the legitimacy of his claim of entitlement to any contractual rights. The offer to Courtney was a continuous employment contract, while specifically not tenure, nevertheless had other aspects of tenured employment. The letter provided that he had a regular on-going faculty appointment with the "benefits" of such an appointment.

We hold that although the matter in question concerns the claim for breach of Courtney's contract for employment with UTA, it also concerns his claim of interference with his property right in that employment. Although Courtney performed no labor and furnished no services for which he was not paid, and was not thereby deprived of property in that concrete sense, we still view Dr. Baker's termination of Courtney in this instance as a possible interference with Courtney's property right to the benefits of his employment contract. This suit does *not* rest upon the tort claims act, nor upon any declaratory relief thereunder. Nevertheless Courtney is entitled

to a hearing upon his disputed "tenure-like" right to future employment.

Accordingly we hold that the trial court did err in determining that Courtney had no property interest, and further did err in determining that Courtney could not maintain a suit against Dr. Baker individually under the provisions of 42 U.S.C. sec. 1983. The court erred in granting the summary judgment.

Having determined that Courtney has a disputed property interest in the contract and that there is a basis for maintenance of a suit under 42 U.S.C. sec. 1983, we sustain points of error three and four. Having done so, we have disposed of the substance of the appeal. Accordingly, without discussing them, we sustain points of error five, six, seven and eight finding there are fact questions remaining unresolved concerning the underlying claims, and an issue of attorney fees remains.

We observe that in his point of error nine, Courtney invites us to overrule the fiction of the "ultra vires" doctrine, and the doctrine of sovereign immunity in state contractual matters. In his invitation Courtney effectively concedes the legal premise upon which the first part of this opinion is based, namely that the state may not be sued in contract absent consent to that suit. He urges us to hold that in legitimate written contracts entered into under usual and customary conditions, we should not permit the state to blatantly ignore its legitimate contracts. However, we may not so hold. That is a decision for the legislature, either on a bill seeking a waiver specifically for Courtney or upon a general consideration of a "Contract Claims Act." The trial court correctly granted summary judgment upon the basis that no consent to sue in contract had been obtained.

However, having sustained points of error three through eight, determining that Courtney was denied the right of due process to test his "property right" in employment and that he might have otherwise valid claims, we hold the court was in error in granting summary judgment on that basis. That portion of the summary judg-

ment is reversed, and the case remanded for trial.

APPENDIX

July 22, 1980

Mr. Byron Max Courtney
2200 Warner Road
Fort Worth, Texas 76110

Dear Mr. Courtney:

I am pleased to offer you an appointment as a Lecturer with the Criminal Justice Division of the Institute of Urban Studies. This is a non-tenure earning position and will be effective September 1, 1980. While this position is not tenure earning, it is the express position of the Criminal Justice Division, the Institute and the University that your contract will be renewed each year so long as you continue to perform satisfactorily.

It is expressly recognized that you do not have a doctoral level degree and you have no intention of studying toward one. It is the position of the Criminal Justice Division that since you will be involved in a full-time faculty position, you should not encumber yourself with a new degree program as that would lessen your time and energies that should be directed toward your faculty responsibilities.

Your teaching load will be the equivalent of 12 hours per semester with summer teaching possible based on the needs of the division and the availability of funds. The salary for the 1980–81 academic year will be $19,300. In addition to this, the University pays 5.85% of the first $16,500 OASI contribution. This will be a regular on-going faculty appointment and you will be entitled to all of the vacation, sick leave and other benefits of such a faculty appointment.

It is understood that a member of the Institute faculty is expected to contribute in public and professional affairs. Maintaining criminal justice agency contracts, conducting short courses, conferences, seminars, scholarly and applied research are examples of expected activities of faculty members in addition to classroom responsibilities. As important as these mat-

ters are, however, your primary responsibility will be to the conduct of your classes. You will be responsible for three courses involving nine contact hours of classroom work. Beyond this it is expected that you will maintain a generous number of office hours and normally will be on campus the major portion of each working day.

–2–

We look forward to having you with us in the fall and in the future. If you have any questions or comments regarding this offer, please do not hesitate to contact either me or Dr. Butcher. If you wish to accept this offer, please sign and return to me the enclosed copy of this letter.

Sincerely,

/s/ D W Mackenna

David W. Mackenna, Acting Director
Institute of Urban Studies

I accept this appointment under the conditions outlined above.

_____

Signature

DAY, Justice, dissenting.

I respectfully dissent.

The majority, while reaffirming the sovereign immunity of the university from suit based on contract, holds that Courtney is entitled to prosecute his suit to "test" his property right to continued employment by the university, reasoning that to rule otherwise would violate Courtney's constitutional right to due process.

In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) the U.S. Supreme Court, in construing the constitutionally guaranteed rights to due process of a year-to-year, non-tenured college professor, wrote:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests *that a person has already acquired* in specific benefits.
>
> . . . .
>
> *Property interests, of course, are not created by the Constitution. Rather,*

*they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .*

. . . .

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement to it.*

*Id.* at 576–77, 92 S.Ct. at 2708–09 (emphasis added).

While *Roth* rejected the teacher's constitutional complaint on the grounds that he had *no legitimate claim of entitlement* to continued employment, on the same day the Supreme Court upheld the teacher's due process claim in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), holding that the teacher there had alleged the existence of *rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment.* In *Sindermann*, the state college had promulgated an official Faculty Guide which stated:

> *Teacher Tenure:* Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has *permanent tenure as long as his teaching services are satisfactory*
>
> . . . .

*Id.* at 600, 92 S.Ct. at 2699 (emphasis added). The teacher in *Sindermann,* who had been discharged without a hearing, alleged that the foregoing language created a de facto tenure system and his justifiable reliance thereon vested him with a *legitimate claim of entitlement to continued employment.* The Supreme Court held that since the teacher's claim to continued employment was alleged by him *to be based upon language officially promulgated by the college* that could constitute a property interest, he was entitled to the procedural protection of the Constitution.

The facts in the instant case clearly reflect that the trial court properly granted summary judgment to the university since

Courtney wholly failed to allege or show that he *had any legitimate claim of entitlement to continued employment.* It is clear from both *Roth* and *Sindermann* that a *legitimate claim of entitlement rising to the level of a "property interest" must be based upon rules or understandings that stem from an independent source such as state law.*

The majority holds that Courtney's reliance upon the Mckenna letter vested him a *legitimate claim of entitlement to continued employment* by the university. The university's regulations specifically promulgated the exclusive method of granting tenure.

The Mckenna letter which purported to grant Courtney "tenure-type" employment was in clear contravention of the university's regulations. These regulations had the force and effect of statute. Courtney was charged with constructive notice that *only* the Board of Regents could grant him continuing employment. To hold that Courtney has the right to "test" his claim of "tenure-like" employment based upon the ultra vires Mckenna letter [1] is to ignore the holdings in both *Sindermann* and *Roth.*

Being convinced that Courtney cannot base a *legitimate claim of entitlement to continued employment* (which would vest in him a cognizable property right procedurally protected under the Constitution) upon the Mckenna letter, I would affirm the summary judgment granted by the trial court.

---

**1.** Although Courtney argues in his brief that the university's board of regents "approved" the Mckenna letter, the record fails to show that the board had any knowledge of the letter.