**UNIVERSITY OF TEXAS SYSTEM, University of Texas at Arlington, and Dr. W.A. Baker, Appellants,**

v.

**Max COURTNEY, Appellee,**

**and**

**Max COURTNEY, Appellant,**

v.

**UNIVERSITY OF TEXAS SYSTEM, University of Texas at Arlington, Dr. W.A. Baker, Robert B. Baldwin, III, Jess Hay, Mario Yzaquirre, Jack S. Blanton, Shannon H. Ratliff, Bill Rodon, Sam Barshop, Louis Beecherl, Jr., And W.A. "Tex" Moncrief, Jr., Appellees.**

No. 2–94–201–CV.

Court of Appeals of Texas, Fort Worth.

May 1, 1997.

Rehearing Overruled June 12, 1997.

Dan Morales, Attorney General, and Jorge Vega, Laquita A. Hamilton, Toni Hunter, and Leo L. Barnes, Assistant Attorneys General of Austin, for appellants/cross–appellees.

Art Brender, Fort Worth, for appellee/cross–appellant.

Before LIVINGSTON and RICHARDS, JJ.

## OPINION ON REHEARING

RICHARDS, Justice.

We overrule appellee/cross-appellant Max Courtney's motion for rehearing. We withdraw our August 29, 1996 opinion and judgment and substitute the following.

## INTRODUCTION

Appellants/cross-appellees The University of Texas System, The University of Texas at Arlington, and Dr. W.A. Baker appeal a jury verdict in favor of appellee/cross-appellant Max Courtney on Courtney's suit involving Courtney's termination from his teaching post at The University of Texas at Arlington. Because we find that (1) The University of Texas System, The University of Texas at Arlington, and the Board of Regents were entitled to sovereign immunity on Courtney's claims of tortious "detrimental reliance" and violations of federal and state due process, (2) Courtney did not properly submit his breach of contract action to the jury, and (3) Baker should not have been held individually liable, we reverse and render a take nothing judgment against Courtney.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 1980, The University of Texas at Arlington (UTA) sent Courtney a letter and offered Courtney a position as a lecturer with the Criminal Justice Division of the Institute of Urban Studies. The position, although not "tenure earning," would be renewed each year as long as Courtney performed satisfactorily. Allan Butcher, the Director of the Criminal Justice Division, drafted the letter, and David MacKenna, the acting Director of the Institute of Urban Studies, signed the letter. Before sending the letter, Butcher and MacKenna got approval for the offer from Baker, the Vice President for Academic Affairs at UTA. Courtney accepted the position. Courtney was an effective and popular teacher at UTA.

In early 1985 to late 1986, UTA reorganized its Criminal Justice program, moving some of its courses into the Sociology Department and others into the Political Science Department. A student graduating from the program would now receive a Bachelor of Arts degree instead of a Bachelor of Science degree, which the student would have received before the reorganization. The end result of this reorganization was that the Criminal Justice Department was removed from the Institute of Urban Studies and moved to the School of Liberal Arts. All

of the classes that Courtney taught were either discontinued or assigned to tenured professors. As a result, Courtney and the only other nontenured lecturer, Gloria Ayers, were not reappointed to their teaching posts. This became effective in the fall of 1986. Obviously, Courtney never received an annual appointment for the 1986–1987 school year; however, Courtney showed up for work on the first day of class. Courtney met with Baker that day, and Baker told him that he had not been reappointed for that school year.

In 1987, Courtney sued The University of Texas System, UTA, and Baker for breach of contract, detrimental reliance, fraud, negligent misrepresentation, and violations of federal and state due process. The trial court granted summary judgment in favor of all defendants and dismissed Courtney's suit. We reversed and remanded the case for trial. *Courtney v. University of Tex. Sys.*, 806 S.W.2d 277, 287 (Tex.App.—Fort Worth 1991, writ denied) (hereinafter "*Courtney I*").

On remand, Courtney amended his suit to add as defendants the Board of Regents of The University of Texas System during Courtney's employment.[1] Courtney's claims of detrimental reliance, breach of contract, and violation of federal and state due process were submitted to the jury. The jury made the following findings:

▶ MacKenna intended that Courtney could only be terminated from his teaching position because of unsatisfactory employment, which was expressed in the 1980 offer letter.

▶ MacKenna acted within the scope of his employment.

▶ Baker did not have the authority to approve a continuing employment position for Courtney.

▶ Baker proximately caused Courtney to detrimentally rely on a promise of continued employment.

▶ The Board of Regents did not proximately cause Courtney to detrimentally rely on a promise of continued employment.

▶ Courtney was not denied the opportunity to meet with the decision maker and state his case, but was denied a written statement of the reasons for his nonrenewal.

▶ Baker and the Board of Regents acted in good faith.

▶ Courtney was entitled to $55,000 in damages plus attorneys' fees.

The trial court entered judgment in favor of Courtney and against UTA and The University of Texas System based on these findings. Although the judgment was only entered against UTA and the University of Texas System, UTA, The University of Texas System, and Baker appeal.[2] Courtney has filed a cross appeal.

For clarity, we have listed UT's points of error and Courtney's cross points in an appendix to this opinion. We will discuss each area raised by these points and will then summarize our holding on each point at the end of the opinion.

## WAS UT ENTITLED TO SOVEREIGN IMMUNITY?

UT alleges that because it was entitled to sovereign immunity, the trial court lacked jurisdiction over it on Courtney's state claims of breach of contract, violations of Courtney's state constitutional due process, violations of Courtney's federal due process rights, and detrimental reliance.

### (1) BREACH OF CONTRACT CLAIM

Regarding Courtney's breach of contract claim, we recognize that in *Courtney I*, we explicitly held that permission of the state is required to sue the state for breach of contract. *Id.* at 282, 284. However, we question the continued viability of the sovereign immunity doctrine as it applies to breach of contract cases. *See Ntreh v. University of*

---

1. The Board of Regents at the time consisted of cross-appellees Robert B. Baldwin, III, Jess Hay, Mario Yzaquirre, Jack S. Blanton, Shannon H. Ratliff, Bill Rodon, Sam Barshop, Louis Beecherl, Jr., and W.A. "Tex" Moncrief, Jr.

2. UTA, The University of Texas System, and the Board of Regents will collectively be referred to as "UT." Baker will be referred to by name.

*Tex. at Dallas,* 936 S.W.2d 649, 654 (Tex. App.—Dallas 1996, writ requested); Renna Rhodes, Comment, *Principles of Governmental Immunity in Texas: The Texas Government Waives Sovereign Immunity When it Contracts—Or Does It?,* 27 St. Mary's L.J. 679, 708–14 (1996).

Nevertheless, even if we were to hold that Courtney was not barred by sovereign immunity to raise his breach of contract claim, there is no explicit jury finding that the employment contract was breached. In other words, although the jury found that Courtney had a contract, it did not make an explicit finding that the contract was breached. All of the jury's findings relate to immunity, due process, or Courtney's tort claim of detrimental reliance. Courtney did not object or submit a request that a breach question be submitted; thus, Courtney cannot recover on his breach of contract claim. *See* Tex.R.Civ.P. 274, 278.

### (2) DETRIMENTAL RELIANCE

We agree with UT that the trial court did not have jurisdiction over Courtney's "detrimental reliance" claim to the extent it was a separate tort claim. Courtney argued to the trial court, and continues to argue in this appeal, that his "detrimental reliance" claim was a tort and not a contract claim.

We do not believe that "detrimental reliance" is a separate *tort* cause of action. In fact, the only case Courtney cites to support his position that detrimental reliance is a tort holds that detrimental reliance is a "doctrinal sibling" to the contractual doctrine of promissory estoppel. *Roberts v. Geosource Drilling Servs., Inc.,* 757 S.W.2d 48, 50 (Tex.App.—Houston [1st Dist.] 1988, no writ). The authorities we reviewed treated detrimental reliance as an equivalent to contractual promissory estoppel. *E.g., id.;* William J. Holloway & Michael J. Leech, Employment Termination Rights and Remedies 50–52 (1985). We can find no authority for the position that "detrimental reliance" is actionable as a tort.

Further, even if we assume that "detrimental reliance" is a separate tort claim, the trial court did not have jurisdiction over it. The State has not waived its sovereign immunity to be sued for this type of "tort" under the Texas Tort Claims Act. *See* Tex. Civ.Prac. & Rem.Code Ann. §§ 101.001—101.109 (Vernon 1986 & Supp.1997). The Texas Tort Claims Act provides that the State's sovereign immunity against a tort action is waived only if the claim is for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id.* § 101.021 (Vernon 1986). Because "detrimental reliance" is not included in the exception to the State's sovereign immunity, the State and its employees, who are acting within the scope of their employment, are immune from tort liability. *See State Dep't of Highways & Pub. Transp. v. Dopyera,* 834 S.W.2d 50, 54 (Tex.) ("Texas is immune from tort liability except as waived under the Texas Tort Claims Act."), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 567 (1992).[3]

### (3) DUE PROCESS UNDER THE TEXAS CONSTITUTION

We also agree that the trial court did not have jurisdiction over Courtney's due process claim under the Texas Constitution. We acknowledge that this seems to go against our holding in *Courtney I* where we held that Courtney could proceed on his

---

**3.** We note that this holding does not contravene our prior decision in *Courtney I* because we specifically did not address Courtney's detrimental reliance claim. *Courtney I,* 806 S.W.2d at 280.

claim that he had a property interest that had been interfered with in violation of due process, which gave rise to "an independent cause of action other than the contract claim." *Courtney I*, 806 S.W.2d at 284. However, since our *Courtney I* decision, the Texas Supreme Court decided that no implied cause of action for damages was intended as a remedy for unconstitutional conduct under the free speech and free assembly clauses of the Texas Constitution. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 144 (Tex.1995).

To come to its decision on these clauses, the Court performed both a historical and textual analysis of the constitutional provisions at issue.[4] *Id.* at 148–49. This analysis led the Court to conclude that nothing in the historical underpinnings or text of the Texas Constitution implied a cause of action for damages for unconstitutional conduct. *Id.* Like the Texas Supreme Court found with the speech and free assembly clauses, we cannot find any historical or textual basis to indicate that the Texas Constitution's due process provision implies a separate cause of action for damages. *See* TEX. CONST. art. I, § 19; *see also Arrington v. County of Dallas*, 970 F.2d 1441, 1447 (5th Cir.1992) (holding due process under the Texas Constitution coextensive with procedural safeguards under Fourteenth Amendment). *Bouillion* does state that aggrieved persons can assert direct claims for *equitable* relief against governmental entities for violations of the provisions of the Texas Bill of Rights. *Bouillion*, 896 S.W.2d at 149. However, the trial court found that Courtney's equitable remedies were rendered moot because there was no longer a Criminal Justice Program that Courtney could be re-appointed to. Courtney does not challenge this holding. In fact, Courtney concedes that *Bouillion* "may well be dispositive of the action against [UT] under the Texas Constitution." Accordingly, we find that Courtney could not bring a claim for monetary, nonequitable damages against UT under the Texas Constitution's due process provision.

### (4) FEDERAL DUE PROCESS

UT alleges that it could not be held liable based on a violation of Courtney's federal due process rights because section 1983 does not apply to UT. *See* 42 U.S.C. § 1983 (1994).

■ Neither a State nor its officials acting in their official, versus individual, capacities are "persons" under section 1983. *Hafer v. Melo*, 502 U.S. 21, 22–23, 112 S.Ct. 358, 360, 116 L.Ed.2d 301, 308 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45, 58 (1989). This is true even if the 1983 action is brought in state instead of federal court. *Will*, 491 U.S. at 66, 109 S.Ct. at 2310, 105 L.Ed.2d at 55. Thus, Courtney cannot maintain an action for a violation of his federal due process rights against UT. This holding does not go against our holding in *Courtney I* because we only stated that Courtney had a section 1983 claim against "Dr. Baker individually"; we did not hold that he could bring a section 1983 claim against UT. *Courtney I*, 806 S.W.2d at 287. Accordingly, UT was entitled to sovereign immunity on Courtney's federal due process claim.

### (5) ATTORNEYS' FEES

UT alleges that because of its sovereign immunity, it cannot be held liable for Courtney's attorneys' fees. We agree.

■ Attorneys' fees on a state law claim against a sovereign are only recoverable if such recovery is provided for by statute or a contract between the parties. *See Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex.1992). No statute applicable to this case provides for attorneys' fees, and Courtney did not have a contract that provided for attorneys' fees recovery. Further, attorneys' fees on a section 1983 action are only recoverable by *prevailing* parties. 42 U.S.C. § 1988 (1989). As we stated above, Courtney should not have prevailed in the court below because of UT's sovereign immunity.

---

**4.** This type of analysis is called the *"Edgewood formulation"* or method of constitutional analysis. *See Ex parte Tucci*, 859 S.W.2d 1, 18 n. 3 (Tex.1993) (Phillips, C.J., concurring) (referring to the analysis in *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 394 (Tex.1989)).

## WAS BAKER ENTITLED TO OFFICIAL IMMUNITY ON COURTNEY'S STATE LAW CLAIMS? [5]

We will now address Courtney's arguments that the trial court erred in not entering judgment against Baker individually on his state law claims.

█ First, we must confront Courtney's allegation that Baker is not entitled to official immunity because he did not properly plead it. Baker pleaded in his fifth amended answer as an affirmative defense that he acted within the course and scope of his discretionary authority. Thus, we find that Baker properly pleaded the affirmative defense of official immunity. *See* Tex.R.Civ.P. 45(d). Further, even if Baker's fifth amended answer was not sufficient to raise the defense, Courtney never objected to the defense at trial or to the submission of the defense to the jury, thereby waiving this complaint. *See* Tex.R.Civ.P. 67, 274.

█ Even though Baker properly raised official immunity as a defense, he still may not be entitled to it. "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). If the acts of an official are not lawfully authorized, then a suit against that official is not a suit against the State, and the individual official is not immune. *See Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (1945). Unlawful or unauthorized acts are not considered acts of the State, and state officials can be sued in their individual capacities for wrongful unofficial acts. *See Lowrey v. University of Tex. Medical Branch at Galveston*, 837 S.W.2d 171, 176 (Tex.App.—El Paso 1992, writ denied).

█ The jury expressly found that Baker did not have the authority from UT to approve Courtney's continuing employment agreement. Baker does not raise a point of

error that challenges the sufficiency of the evidence to support this jury finding. The jury also found that Baker acted in good faith; however, the affirmative defense of official immunity under state law requires that all three factors be present. Baker has not met one of the official immunity requirements: acting within the scope of his authority. Thus, Baker is not entitled to official immunity on Courtney's state law claims.

Courtney also challenges the evidence to support the good faith finding. However, because we have already found that Baker was not entitled to official immunity based on the jury's finding that Baker acted outside the scope of his duties, we do not need to address these points regarding the "good faith" question.

## WAS OFFICIAL IMMUNITY PROPERLY SUBMITTED TO THE JURY ON COURTNEY'S FEDERAL LAW CLAIMS?

█ When an official is sued in his individual capacity under federal law, that official may assert personal immunity defenses, i.e., official immunity. *See Hafer*, 502 U.S. at 25, 112 S.Ct. at 362, 116 L.Ed.2d at 309–10. Baker asserts that because his actions were objectively and legally reasonable, he is entitled to official immunity under federal law. Courtney, in his only challenge to Baker's federal official immunity defense, argues that this defense should not have been submitted to the jury because it is a question of law. It is apparent that Courtney is challenging the submission of the "good faith" question.

Courtney did not object at trial to the submission of the "good faith" question on the grounds that he asserts now. The failure to point out to the trial court the complaint that is urged on appeal waives the appellate complaint. *See* Tex.R.Civ.P. 274; *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) (op. on reh'g); *Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex.

5. The terms "qualified" and "official" immunity are used interchangeably by Texas courts. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 100 n. 2 (Tex.1992) (op. on reh'g) (Cornyn, J., concur-

ring). Thus, we will use "official immunity" to refer to any immunity Baker might be entitled to individually.

1987). Thus, Courtney has failed to preserve this complaint for our review.

## SHOULD BAKER HAVE BEEN HELD INDIVIDUALLY LIABLE?

### (1) DUE PROCESS UNDER THE TEXAS CONSTITUTION

As we discussed before, *Bouillion* held that there is no implied cause of action for nonequitable, monetary damages for a violation of the Texas Constitution. *Bouillion,* 896 S.W.2d at 144. We realize that *Bouillion* literally addressed only the question whether a governmental entity may be sued for damages under the Texas Constitution. It did not involve the related question whether individual public officials may be personally sued for damages for violating an express Texas Constitution provision. However, we believe that the logic of *Bouillion* applies with equal force to a claim under the Texas Constitution against an individual public official. In other words, because the history and text of the Texas Constitution do not support such a claim against a governmental entity, it necessarily does not allow a damages action against a public official. Thus, we find that the monetary damages action against Baker under the Texas Constitution also is not cognizable under *Bouillion.*

### (2) FEDERAL DUE PROCESS

Because judgment was not entered against Baker on any of Courtney's claims, it follows that he was given official immunity under federal law because he was not entitled to official immunity under state law. As we discussed above, Courtney has not effectively challenged Baker's right to official immunity under federal law; therefore, Baker should not have been held individually liable on Courtney's federal due process claim.

### (3) DETRIMENTAL RELIANCE

Courtney alleges that Baker should have been held personally liable on his claim of detrimental reliance. During trial and in this appeal, Courtney has consistently averred that "detrimental reliance" is a tort action.

As we held above, "detrimental reliance" is not a separate tort cause of action. Even though Baker is not entitled to official immunity against Courtney's tortious detrimental reliance claim, we cannot hold that Courtney may recover individually from Baker on a claim that does not exist as pleaded. *Cf. ITT Consumer Financial Corp. v. Tovar,* 932 S.W.2d 147, 155–56 (Tex.App.—El Paso 1996, writ denied) (holding that plaintiff could not avoid strict elements of malicious prosecution action by calling it negligence). Baker is not individually liable on Courtney's tort claim of detrimental reliance.

## DID THE TRIAL COURT CORRECTLY CALCULATE THE ATTORNEYS' FEES?

Courtney alleges that the trial court erred in calculating the attorneys' fees based on the base amount of recovery and not on the total recovery. Because we have found that Courtney cannot recover monetary damages on any of his claims, he is not entitled to attorneys' fees. Therefore, this argument is moot.

## SUMMARY AND CONCLUSION

We sustain UT's points of error two and six. We sustain in part point of error one, but overrule point of error one to the extent that it alleges Courtney's breach of contract claim was barred by sovereign immunity. We sustain point of error five as it relates to Courtney's breach of contract claim. We do not address points three and four because they are rendered moot by our treatment of points one and two.

We sustain Courtney's cross-point five and, accordingly, do not address cross-point four. We overrule cross-points one, two, three, six, and nine. We do not address cross-points seven and eight because they are rendered moot by our holdings on cross-points five and six. We do not address cross-point ten because it is rendered moot by our holdings on UT's points and Courtney's cross-points.

Based on the above, we reverse the judgment of the trial court and render a take nothing judgment against Courtney.

**472** ■

*UT'S POINTS OF ERROR*

1. The trial court erred in entering judgment against The University of Texas System because the trial court lacked jurisdiction over it based on sovereign immunity.

2. The trial court erred in entering judgment against The University of Texas System under section 1983 based on sovereign immunity.

3. The trial court erred in entering judgment against The University of Texas System under section 1983 because Courtney did not show a deprivation of a constitutionally protected interest in his employment.

4. The trial court erred in entering judgment against The University of Texas System under section 1983 because Courtney did not show he was deprived of due process of law.

5. The trial court erred in entering judgment against The University of Texas System because the jury's verdict does not support such a judgment.

6. The trial court erred in entering judgment against The University of Texas System for Courtney's attorneys' fees and costs because such an award has no statutory basis and is barred by sovereign immunity.

*COURTNEY'S CROSS-POINTS*

1. Baker should be held personally liable for the violation of Courtney's rights to due process under the Texas Constitution.

2. Baker should be held personally liable for the violation of Courtney's rights to due process under the U.S. Constitution.

3. Baker is not entitled to the defense of official immunity on Courtney's state law claims because Baker did not plead it as an affirmative defense.

4. Baker is not entitled to the protections of official immunity because his acts and representations were not governmental acts.

5. Baker is not protected by official immunity because his acts were outside his authority as a state official.

6. The trial court erred in submitting the defense of official immunity to the jury because it is a question of law.

7. There is no evidence to support the jury's finding that Baker acted in good faith.

8. There is insufficient evidence to support the jury's finding that Baker acted in good faith.

9. Baker should be held individually liable under the common law of detrimental reliance because official immunity is not applicable to a common law tort.

10. The trial court incorrectly determined the amount of attorneys' fees by calculating the fee on the amount of damages awarded to Courtney and not on the total recovery.